Matthew T. Christensen, ISB: 7213
ANGSTMAN JOHNSON
199 N. Capitol Blvd, Ste 200
Boise, ID 83702
Phone: (208) 384-8588
Fax: (208) 853-0117
Email: mtc@angstman.com

Attorney for Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>TIMOTHY D. SEMONES and SUSAN C. DESKO,<br><br>                         Debtors. | Case No. 19-40057-JMM<br>Chapter 11 |

**CHAPTER 11 PLAN OF REORGANIZATION**

The Debtors, Timothy D. Semones ("Semones") and Susan C. Desko ("Desko"), and hereby submit their Plan of Reorganization (the "Plan" or "Plan of Reorganization").

**ARTICLE l - DEFINITIONS**

1.1  Definitions.  The capitalized terms used herein shall have the respective meanings as set forth below.

    (a) "Allowed" Claim shall mean claim as allowed pursuant to 11 U.S.C. §502.

    (b) "Bankruptcy Court" shall mean the United States Bankruptcy Court.

    (c) "Debtors" shall mean the Debtors-in-possession, as identified in the caption.

    (d)  "Claim(s)" shall mean claim, as defined in 11 U.S.C. § 101(5).

(e) "Confirmation" shall mean approval of the Plan by order of the Bankruptcy Court pursuant to 11 U.S.C. §§ 1128 and 1129.

(f) "Distribution Date" shall mean the tenth (10th) day after the date upon which the Confirmation Order becomes final and non-appealable. The Confirmation Order becomes final and non-appealable fourteen (14) days after the Confirmation Order is entered, if no appeal is filed, and after the conclusion of any appeal, if any party does appeal the entry of the Confirmation Order.

(g) "Effective Date" shall mean the date upon which the court enters its Confirmation Order.

## ARTICLE 2 - CLASSIFICATION OF CLAIMS

2.1 The Debtors' Plan of Reorganization provides for administrative expenses and establishes classes for claims. Those classes are:

1. Secured Claim of Wells Fargo Bank (secured by first-position lien on real property located at 105 Madison Ave)
2. Secured Claim of Wells Fargo Bank (secured by second-position lien on real property located at 105 Madison Ave)
3. Secured Claim of Wells Fargo Auto Finance (secured by first-position lien on 2005 Mercedes)
4. Secured Claim of United Bridge Capital (unsecured as to Debtors, but secured by first-position lien on real property located at 29 Lake Creek)
5. Secured Claim of Eta Compute, Inc. (unsecured as to Debtors, but secured by second-position lien on real property located at 29 Lake Creek)
6. Claims for Priority Taxes
7. Unsecured claim of Banatao Living Trust
8. General Unsecured Claims

## ARTICLE 3 - UNIMPAIRED AND IMPAIRED CLASSES OF CLAIMS

3.1 <u>Unimpaired Classes.</u> Classes 1, 2 and 3 – the secured claims of Wells Fargo Bank or Wells Fargo Auto Finance.

  3.2 <u>Impaired Classes.</u> All remaining classes are impaired under this Plan.

### ARTICLE 4 - ADMINISTRATIVE EXPENSES

  Each holder of an allowed administrative expense shall receive the fully allowed amount of such claim in cash at confirmation or as otherwise agreed.  The Bankruptcy Court will review and allow, in an amount it believes appropriate, any application for approval of compensation for professionals, including attorneys, accountants, real estate appraisers or other professionals.  The cost of those professional services is unknown at this time.  The amount of compensation approved by the bankruptcy court for those professional services shall be paid as an administrative priority claim.

  Until compensation for a professional is approved, Debtors are prohibited from making any payment from funds of the estate on those fees.  Debtors shall submit an application for approval of compensation at an appropriate time, and shall give notice to all interested parties of any application for compensation.

  To the extent that the Debtors have fees and costs due to more than one professional, each professional shall have equal priority with other professionals.  These fees and costs shall be paid in full before any payment is due or is made to any other unsecured claim.  *See 11 U.S.C. §1129(a)(9).*

  To the extent Debtors do not have funds on hand or in bank accounts from which to pay professional fees and costs approved by the Court and not paid from a retainer, Debtors will pay the professional fees and costs from funds otherwise to be used to pay holders of unsecured claims until paid in full.  These funds may come from the funds that would otherwise be used to pay priority tax claims and general unsecured claims.  To the extent that Debtors do pay an

allowed administrative expense, the payment to priority tax claims or unsecured creditors not paid previous to that date may be delayed.

As of the date of filing of this Plan, Debtors have an attorney whose employment was approved, Angstman Johnson. That firm currently holds some funds in a client trust account to be applied towards any awards of compensation for those attorneys. No other professionals have been employed in this case.

Pursuant to 28 U.S.C. § 1930(a)(6), the Debtors are obligated to pay quarterly fees to the United States Trustee during the pendency of the chapter 11 case until a plan is confirmed. The United States Trustee's quarterly fees are an administrative expense, and any unpaid US Trustee fees shall be paid on the Effective Date of the plan by virtue of 11 U.S.C. § 1129(a)(12). The Debtors shall pay, when due, all quarterly fees incurred from the date of confirmation until the case is closed by the Court, converted or dismissed, whichever occurs first.

## ARTICLE 5 - PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS

The Debtors propose to treat the classes as follows:

A. <u>CLASS 1:</u>   This class consists of a secured claim by Wells Fargo Home Mortgage in the approximate amount of $486,916.00. This claim is secured by a first-position lien on the Debtors' residence. The Debtors are not in default on this loan, and the required payments under the loan agreement shall be paid directly by the Debtors. These payments to Wells Fargo shall be made "outside" the Debtors' bankruptcy plan, and not considered part of their Plan approved by the court. Wells Fargo shall retain its lien securing the claim, until the remaining amount due under the loan agreement is paid, at which time the lien shall be released.

B. <u>CLASS 2</u>: This class consists of a secured claim by Wells Fargo Home Mortgage in the approximate amount of $100,000.00. This claim is secured by a second-position lien on the Debtors' residence. The Debtors are not in default on this loan, and the required payments under the loan agreement shall be paid directly by the Debtors. These payments to Wells Fargo shall be made "outside" the Debtors' bankruptcy plan, and not considered part of their Plan approved by the court. Wells Fargo shall retain its lien securing the claim, until the remaining amount due under the loan agreement is paid, at which time the lien shall be released.

C. <u>CLASS 3</u>: This class consists of a secured claim by Wells Fargo Auto Finance in the approximate amount of $5,300.00. This claim is secured by a first-position lien on the Debtor's 2005 Mercedes. The Debtors have continued payments on this claim after the initial bankruptcy petition was filed, and this claim has been fully paid through regular payments. The Debtors do not propose any further payments to this class, and expect Wells Fargo to shortly release the lien on the vehicle.

Unless outlined differently above, payments to the above Classes will begin on the Distribution Date. All of these creditors hold claims secured by the collateral identified. Unless stated otherwise above or ordered by the Court, each creditor shall retain its lien on its collateral until such time as its allowed, secured claim is paid in full. Once a secured claim is paid in full, that creditor will have no further claim against the Debtors, and it shall take all steps necessary to release any and all liens it may have.

D. <u>CLASS 4</u>: This class consists of a secured claim by United Bridge Capital in the approximate amount of $2,221,000.00. This claim is secured by a first-position lien on real property located at 29 Lake Creek. The real property is owned by Inphi Partners, LLC, a company owned by the Debtors. The Debtors' direct liability on this loan is via a personal guaranty, which is unsecured as to the Debtors. Inphi Partners, LLC, is in the process of marketing and selling the real property securing this claim. The Debtors anticipate the sale of the real property will completely pay this claim. In the event the sale of the real property does not produce sufficient proceeds to completely pay this claim, Inphi Partners, LLC, will transfer the property to United Bridge Capital in full satisfaction of the claim.

E. <u>CLASS 5</u>: This class consists of a secured claim by Eta Compute, Inc., in the approximate amount of $1,800,000.00. This claim is secured by a second-position lien on real property located at 29 Lake Creek. The real property is owned by Inphi Partners, LLC, a company owned by the Debtors. The Debtors' direct liability on this loan is unsecured. Inphi Partners, LLC, is in the process of marketing and selling the real property securing this claim. The Debtors anticipate the sale of the real property will completely pay this claim. In the event the sale or transfer of the real property does not produce sufficient proceeds to completely pay this Claim, the remaining balance owed shall be considered unsecured and treated in the same manner as claims in Class 8.

F. <u>CLASS 6</u>: After payment of any administrative priority expenses approved by the Court, see above, Debtors will pay the Idaho State Tax Commission and Internal Revenue Service for any allowed pre-petition taxes, in full

from funds in the Debtor-in-possession accounts, pursuant to 11 U.S.C. §1129(a)(9)(C). In the event the Debtors do not have sufficient funds in the Debtor-in-Possession accounts on the Distribution Date to pay these claims in full, the Debtors shall make regular monthly payments to these creditors (starting on the Distribution Date) in the amount of $3000.00 per month for as many months necessary until this claim is paid in full. In the event this claim is not paid in full on the Distribution Date, it shall accrue interest at the rate of 3% per annum.

G. CLASS 7: This class consists of the unsecured claim of Banatao Living Trust in the approximate amount of $1,500,000.00. This claim will be satisfied by the Debtors transferring ownership of all shares in Eta Compute, Inc. to Banatao Living Trust in full satisfaction of the claim.

H. CLASS 8: This class consists of unsecured claims of general unsecured creditors. Debtors will make payments, pro rata, to holders of general unsecured claims. The Debtors anticipate that, upon the final payments under this Plan, the holders of general unsecured claims will receive 100% of their allowed claims. To the extent the Debtors do pay an allowed administrative expense, the payment to priority tax claims and general unsecured claims will be delayed.

The Debtors currently hold funds in DIP accounts. Some of the DIP account funds are proceeds of loans for the construction of the 29 Lake Creek property, and will continue to be used for that purpose. After confirmation, the Debtors will continue to finish and market the 29 Lake Creek property, as well as pay required interest payments on the United Bridge loan until the property is sold. Those payments are accounted for in the Debtors' proposed 12-month budget attached hereto. Upon confirmation, the Debtors will begin making monthly payments of

$3,000.00 pro rata to unsecured creditors (including all creditors in Class 8, and any unsecured portion of Eta Compute, Inc.'s claim). Upon completion and sale of the 29 Lake Creek property, if any additional amounts are still owed to unsecured creditors (i.e., if their claims are not fully paid through the sale of the 29 Lake Creek property), the Debtors will (in the order listed and until all unsecured creditors are paid in full): (a) pay an additional one-time payment to unsecured creditors of the balance of the Debtor-in-Possession accounts, which the Debtors estimate will be $50,000.00; (b) liquidate all non-exempt vehicles and pay the net proceeds to the remaining unsecured creditors; and (c) continue monthly payments of $3000.00 until all remaining unsecured creditors are paid in full.

## ARTICLE 6 - SECURITIES TO BE ISSUED PURSUANT TO THIS PLAN

6.1  No securities will be issued pursuant to this Plan.

## ARTICLE 7 - ACCEPTANCE OR REJECTION OF PLAN

7.1  <u>Classes Entitled to Vote.</u>  All holders of Allowed Claims shall be entitled to vote individually by class to accept or reject this Plan.

7.2  <u>Requirements for Acceptance of Plan by Classes.</u>  A class of claims shall have accepted this Plan if it is accepted by the holders of Allowed Claims of at least two-thirds (2/3) of the total amount of the Allowed Claims held by those in the class who voted and more than one-half (1/2) in number of the total number of those in the class who voted.

7.3  <u>Cram Down.</u>  In the event that any impaired Class fails to accept this Plan in accordance with Section 7.2, above, the Debtors reserve the right to request the Bankruptcy Court to confirm this Plan pursuant to 11 U.S.C. §1129(b).

## ARTICLE 8 - MEANS FOR IMPLEMENTING THE PLAN

8.1 <u>Source of Payments.</u>  The Debtors will make chapter 11 plan payments by using their income generated from all sources, through distribution of the funds currently held in the DIP accounts, and through liquidation and sale of the 29 Lake Creek property and other assets held by the Debtors, as outlined above.

## ARTICLE 9 - PROVISIONS GOVERNING DISTRIBUTIONS

9.1  <u>Date of Distributions.</u>  Under this Plan, distributions of cash shall be made as provided for herein, or as otherwise may be ordered in writing by the Bankruptcy Court.

9.2  <u>Cash Payments.</u>  Cash payments required by this Plan may be made by check drawn on a domestic bank.

9.3  <u>Time Bar to Payments by Check.</u>  Checks issued by the Debtors in payment of Allowed Claims shall become null and void if not presented for final payment within ninety (90) days of the date of issuance thereof.  After such date, any Claim on account of which such an instrument was issued shall be discharged and forever barred.

## ARTICLE 10 - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1  <u>Assumed If Not Rejected.</u>  The following contracts and leases subject to the provisions of 11 U.S.C. §365 hereby are specifically assumed:  **NONE.**

10.2  <u>Bar to Rejection Damages.</u>  If the Debtors' rejection of any executory contract or unexpired lease produces an Allowed Claim for damages, such Claim, if not theretofore evidenced by a filed proof of claim, shall forever be barred and unenforceable against the

Debtors or their property unless such a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors by the later of thirty (30) days after the Distribution Date or thirty (30) days after entry of the final order allowing rejection of such contract or lease.

## ARTICLE 11 - PROCEDURES FOR RESOLVING CONTESTED AND CONTINGENT CLAIMS

11.1  Objection Deadline.  As soon as is practicable, but in no event later than six (6) months after the Distribution Date, all objections to Claims shall be filed with the Bankruptcy Court and served upon the holder of each objected-to Claim.

11.2  Prosecution of Objections.  The Debtors shall litigate to judgment, settle or withdraw any objection made to contested Claims.

11.3  No Distribution Pending Allowance.  Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to all or any portion of a contested Claim unless and until any objection to such contested Claim shall have been determined by final order of the Bankruptcy Court.

11.4  Treatment of Contingent Claims.  Except as otherwise stated herein, until such time as a contingent Claim becomes fixed and absolute, such Claim shall be treated as a contested Claim for purposes of estimation, allocation and distribution.

## ARTICLE 12 - MISCELLANEOUS PROVISIONS

12.1  Prepayment. The Debtors shall have the right at any time to prepay, without penalty, all or any portion of an Allowed Claim.

12.2  Compliance With Tax Requirements.  The Debtors shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing

authorities to the extent that any payment or distribution under this Plan shall be subject to any such requirement.

12.3 <u>Compliance With All Applicable Laws.</u>  In the implementation of the provisions of this Plan, the Debtors shall comply with every applicable law, rule, regulation or order; provided that nothing contained herein shall require such compliance where the legality or applicability of any such law, rule, regulation or order is being contested by the Debtors in appropriate proceedings in good faith and, if required, for which an adequate reserve has been set aside.

12.4 <u>Set-offs.</u>  The Debtors may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim that the Debtors may have against such holder.

12.5 <u>Discharge of the Debtors.</u>  All payments and distributions made by the Debtors under this Plan shall be in exchange for and in complete satisfaction, discharge, release and cancellation of, all Claims of any nature whatsoever concerning the Debtors or any of their assets or properties.  Except as otherwise provided herein, upon the entry of an Order of Discharge at completion of the Plan or otherwise, the Debtors shall be deemed discharged and released from all claims pursuant to 11 U.S.C. §1141(d)(5)(A), including but not limited to demands and liabilities that arose before the filing of the Petition and all debts of the kind specified in 11 U.S.C. §§502(g), 502(h) and 502(i), whether or not (I) a proof of claim based upon such debt is filed or deemed filed under 11 U.S.C. §501; (ii) a Claim based upon such debt is Allowed; or (iii) the holder of a Claim based upon such debt has accepted this Plan.  Debtors may seek, but

do not anticipate seeking, a discharge before completion of the plan, after notice to all interested parties and after a hearing.

    12.6.  <u>Appointment of Disbursing Agent</u>.  The Debtors shall be the disbursing agents for the estate.

    12.7.  <u>Sale of Property</u>.  At any time during the term of this Plan, the Debtors may sell property when the Debtors deem the sale expedient.  The sale proceeds may be applied to the secured portion of the appropriate secured creditor's claim thereby reducing the amount of the payments to such creditor by the amount of the sale proceeds.

    12.8.  <u>Retention of Property</u>.  The Debtors shall retain all property of the estate, except such personal property that is not needed by the Debtors for an effective reorganization. Property that is not needed will be abandoned or sold and the proceeds applied to the appropriate secured creditor's claim, whichever is deemed appropriate by the Debtors.

    12.9.  <u>Execution of the Plan</u>.  The Debtors shall adhere to the payment schedules described within this Plan.

    12.10.  <u>Post-filing Indebtedness</u>.  No post-filing indebtedness, other than what has been set forth in this Plan, has been incurred by the Debtors which indebtedness is in arrears or is not current.

    12.11.  <u>Adversary Proceedings</u>.  The Debtors reserve the right to begin or continue any adversary proceedings permitted under Title 11 of the United States Code.

    12.12.  <u>Use of Cash Collateral and Additional Secured Debts</u>.  The Debtors may continue to use cash collateral (to the extent any creditor claims that they have an interest in any cash collateral) in their day-to-day affairs and payment of various secured debts, provided their plan payments are current.  The right to use cash collateral shall terminate if the Debtors do not make

the payments stated above, and continued use shall be allowed only when the payments are brought current. The Debtors also reserve the right to seek authorization to incur secured debts in accordance with 11 USC §364(c) and (d) of the Bankruptcy Code.

## ARTICLE 13 - CONSUMMATION OF PLAN

13.1     <u>Retention of Jurisdiction</u>. The court will retain jurisdiction under this Plan until this Plan has been fully consummated, including but not limited to the following purposes:

    A.     Classification of the claim of any creditor and the re-examination of the claims which have been allowed for the purposes of voting, and the determination of such objections as may be filed to the creditors claims. The failure by the Debtors to object or examine any claim for the purposes of voting shall not be deemed a waiver of the Debtors' right to object to allowance thereafter.

    B.     Determination of all core proceedings.

    C.     The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

    D.     The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

    E.     To enforce and interpret the terms and conditions of this Plan.

    F.     Entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtors and to impose such limitations, restrictions, terms and conditions as this court may deem necessary.

    G.     Entry of all necessary orders, judgments and decrees.

    H.     Entry of an order concluding and terminating this case.

CHAPTER 11 PLAN – PAGE 13
Matter: 13099-001

13.2  <u>Withdrawal of Plan.</u>  The Debtors reserve the right to revoke and withdraw this Plan prior to Confirmation.  If the Debtors revoke or withdraw this Plan, or if Confirmation of this Plan does not occur, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further or other proceedings involving the Debtors.

## ARTICLE 14 – CONCLUSION

The Debtors have given every thought to the complex problems confronting them, and with the assistance of their counsel have devised and formulated this Plan.  This Plan is respectfully submitted with the hope that its equity and fairness will be considered by all parties in interest, whose consent is necessary to perfect it.  It is further hoped that all creditors will join in an affirmative vote for the Plan in order that they, as well as the Debtors, will receive the maximum benefits to be derived therefrom.  The Debtors have not audited the claims or other figures; however, this Plan and the approved Disclosure Statement are as accurate as is feasible under the circumstances.

DATED: June 28, 2019.


_____/s/_____
Timothy Semones, Debtor


_____/s/_____
Susan Desko, Co-Debtor


_____/s/_____
Matthew T. Christensen, Attorney for the Debtors