Matthew T. Christensen, ISB: 7213
Chad R. Moody, ISB: 9946
ANGSTMAN JOHNSON
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Telephone: (208) 384-8588
Facsimile: (208) 629-2157
Email: mtc@angstman.com
        chad@angstman.com

Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>TIMOTHY D. SEMONES and SUSAN C. DESKO,<br><br>         Debtors. | Case No. 19-40057-JMM<br><br>Chapter 11 |

**MOTION TO APPROVE COMPROMISE**

Pursuant to Fed. R. Bankr. P. ("Rule") 9019, the Timothy D. Semones ("Semones") and Susan C. Desko ("Desko") (collectively "Debtors"), by and through their counsel of record, move the Court to approve a compromise between the Debtors and creditor, Eta Compute, Inc. ("Eta"). This Motion is made and is based upon the terms of a certain settlement agreement reached in the pending adversary proceeding, *Eta Compute, Inc v. Semones et al*, Adv. Case No. 19-08028-JMM (the "Adversary Proceeding"), considerations in this bankruptcy case, and the following. In support of this Motion, the Debtors represent as follows:

MOTION FOR APPROVAL OF COMPROMISE – PAGE 1
Matter: 13099-003

## FACTS

On January 24, 2019, Debtors filed their petition seeking relief under Chapter 11 of the U.S. Bankruptcy Code. Debtors are individuals and Debtors in Possession in the above captioned Chapter 11 bankruptcy case. Desko operates her own architecture practice which is pursued through Susan Desko PC. Semones previously was the Chief Financial Officer ("CFO") of Eta. Currently, Semones is self-employed as Principal at SD Consulting, LLC, a company providing valuation and technology consulting services. Semones is also the sole and managing member of Inphi Partners, LLC ("Inphi Partners") organized to develop specific real estate commonly referred to in this case as 29 Lake Creek Drive. Inphi Partners borrowed, with Semones as personal guarantor, construction and development funds for the 29 Lake Creek Drive project. In some cases, depending on the lenders, the loan funds would be received directly by the Debtors, but used by Inphi Partners to fund the construction. At the time of filing the bankruptcy petition, the Debtors still had loan proceeds in their individual accounts, which continued to be transferred to Inphi Partners, in the ordinary course of developing the property.

While the CFO of Eta, certain Funds were borrowed from Eta by Semones for the construction of the 29 Lake Creek Drive property. Eta disputes that the funds were borrowed and instead has alleged that Debtors stole or otherwise misappropriated Eta funds. Prior to Debtors filing their bankruptcy petition, Eta initiated a lawsuit in the United States District Court for the District of Idaho, Case No. 1:18-cv-0052-BLW, against Semones and Desko (as well as their other entities), pursuing various claims that the funds were misappropriated funds by Semones. This lawsuit prompted the Debtors' Chapter 11 case.

Following the commencement of this bankruptcy case, on April 23, 2019, Eta filed a complaint commencing the Adversary Proceeding against the Debtors asserting claims seeking to

deny a discharge of the debts owed to Eta.  Adversary Doc. No. 1.  Debtors filed their Answer to Eta's non-dischargeability complaint.  Adversary. Doc. No. 9.  Eta later sought and was granted leave to file an amended non-dischargeability complaint.  Adversary. Doc. No. 32.  Based on Eta's First Amended Non-Dischargeability Complaint (Adversary. Doc. No. 33 – "Amended Complaint"), Eta brought the Adversary Proceeding under 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(2)(A), and 11 U.S.C. § 523(a)(6).  Pursuant to the Amended Complaint, Eta seeks judgments for debts owed by Debtors, and sought to include treble damages under California law.  *See* Amended Complaint, Doc. No. 33.  The Debtors dispute the facts alleged in the nondischargeability proceeding.

In lieu of incurring the time and expense of proceeding with further litigation, discovery, motion practice, and trial in the Adversary Proceeding, the parties reached a settlement to resolve the alleged non-dischargeability claims at issue in the Adversary Proceeding.  The settlement between the Debtors and Eta is conditioned on, and is subject to, the Court approving the compromise pursuant to Rule 9019.  Notably, the Court approved Debtor's Second Amended Disclosure Statement (Doc. No. 82 – "Disclosure Statement") at the November 21, 2019 hearing.  The written Order is pending.  The material claim treatment terms of the settlement agreement between Debtors and Eta were contemplated by and integrated into in the Disclosure Statement.  *See* Disclosure Statement, Doc. No. 82, pp. 11-12.

## PROPOSED COMPROMISE

The Debtor respectfully requests the Court approve the settlement agreement between Debtors and Eta.  The executed settlement agreement along with the referenced exhibits are attached as **Exhibit A** (the "Compromise") and are fully incorporated here by reference.  In general terms, however, the Compromise is outlined as follows:

A.  . Semones and Desko each agree to the entry of separate non-dischargeable judgments in the pending adversary proceeding, *Eta Compute, Inc v. Semones et al*, Adv. Case No. 19-08028-JMM (the "Adversary Proceeding"), in the amounts of $1,300,000.00 and $1,000,000.00, respectively, and substantially in the form of the judgments attached to the settlement agreement as Exhibits A and B, respectively (the "Judgments").

B.  Semones and Desko each agree to transfer all their individual and collective ownership of shares in Eta to Eta pursuant the redemption agreement attached to the settlement agreement.

C.  In return and upon satisfaction of the Judgments and transfer of shares, Eta will fully release and discharge all claims against Semones and Desko.

D.  In further consideration of the parties' mutual promises, Eta agrees that the Judgments may be collectively satisfied upon receipt of payment in the amount of $1,300,000.00 on or before 3 years from the date the Court's order approving the Compromise becomes unappealable.

Additional terms, conditions, and reservations effectuating these compromise terms are further detailed in the executed settlement agreement.

## FACTORS FOR APPROVAL OF COMPROMISE

Under Fed. R. Bankr. P. 9019, the Court has the authority to approve compromises between parties.  *Id.*  The Court may approve a proposed compromise if it is "fair and equitable" and supported by an adequate factual foundation.  *In re Rake*, 363 B.R. 146, 152 (Bankr.D.Idaho, 2007).  Several factors may be considered, including the probability of successfully litigating the claims, difficulty in enforcement of a judgment/collection, the complexity, expense, and delay of

MOTION FOR APPROVAL OF COMPROMISE – PAGE 4

the litigation, the risk of non-collection, and the paramount interest of creditors.  *Id.*; *see In re: Marples*, 266 B.R. 202, 206, 01.3 I.B.C.R. 116, 118 (Bankr. D. Idaho, 2001); *Martin v. Kane (In re: A&C Properties)*, 784 F.2d 1377, 1381-83 (9th Cir., 1986).  Subject to Court approval, the Debtor asserts that the proposed compromise is a "fair and equitable" resolution of the disputes between the parties based on the relevant factors.

A. __Probability of Successfully Litigating the Claim__

Eta pursued the Adversary Proceeding based on its belief that Semones and Desko misappropriated Eta funds.  Specifically, Eta seeks an order denying the Debtors a discharge of debts owed to Eta on the following grounds: (1) under 11 U.S.C. § 523(a)(4) for alleged fraud while acting in fiduciary capacity, embezzlement, or larceny; (2) under 11 U.S.C. § 523(a)(2)(A) for alleged false representation or actual fraud; and (3) under 11 U.S.C. § 523(a)(6) for alleged willful and malicious injury to Eta (collectively the "Claims").

First, for purposes of § 523(a)(4), Eta alleges that Semones, as CFO, in transferring funds from Eta to Susan Desko, P.C. and Inphi Partners, LLC., stole or misappropriated funds (with Desko's knowledge) to finance construction of 29 Lake Creek Drive property.  It may be demonstrated that Semones was in rightful possession of the funds and had transferred those funds to Debtors' related entities.  Although Debtors dispute allegations that such funds were misappropriated or that there were circumstances indicating fraudulent conduct, the claim depends on what the parties understood regarding what Semones could and could not do with Eta funds.  Although both parties presumably can point to facts to support their respective argument, under the circumstances there is a risk that a fact finder could construe the facts against the Debtors.

Second, for purposes of § 523(a)(2)(A), Eta must show that Semones made false representations or committed actual fraud in obtaining money or property.  Eta claims that Debtors

knowingly made fraudulent omissions by failing to disclose certain money transfers and thus, showed intent to deceive Eta in order to hinder, delay or defraud Eta. *See generally* Amended Complaint. Debtors dispute some of the facts supporting Eta's allegations, including that, at the time of the subject representation/omission, Debtors' knew that the omission created a false statement and that Debtors intended to deceive Eta. It is difficult to determine the likelihood of success as the claim requires extensive evaluation of circumstances and facts to determine intent and knowledge of Debtors and Eta's understanding and belief regarding those facts at the time of the alleged representation. Nonetheless, there appears some risk to the Debtors that Eta will be able to prove this claim.

Third, for purposes of § 523(a)(6), Eta will have to demonstrate that (1) the Debtors' conduct in inflicting injury on Eta was willful; and (2) the Debtors' actions inflicting the injury were malicious. Eta alleges that Debtors injured Eta by stealing Eta's money, receiving Eta's money knowing it was stolen, concealing and withholding stolen monies, and aiding or concealing and withholding of stolen monies. Debtors again dispute Eta's characterization of the facts and circumstances concerning Debtors' actual conduct and intent. Initially, as to willfulness, it is uncertain how a fact finder may construe the totality of the facts. Eta may likely be able to show that Debtors intentionally acted to use Eta funds, however there is a question whether there will be sufficient evidence (beyond mere circumstantial evidence) to demonstrate that Debtors intentionally or deliberately inflicted an injury on Eta. *See Masuo v. Galan (In re Galan)*, 455 B.R. 214, 221-222 (Bankr. D. Idaho 2011). Next, as to maliciousness, Eta will have to show that the Debtors caused an injury which involved (1) a wrongful act, (2) completed intentionally, (3) which necessarily caused injury, and (4) that was done without just cause or excuse. *See id.* Debtors contend that this element may be difficult for Eta to show as Debtors believe that their

conduct did not constitute a wrongful action and/or there was a valid explanation for the Debtors' actions. Nevertheless, Eta presumably would contend that there is evidence to show that Debtors' use of the Eta funds was wrongful under the circumstances and was without an excuse that would be recognized by the Court.

In sum, Etas claims and Debtors' potential defenses are factually intensive and will likely require extensive discovery and expert testimony. The facts are highly contested and thus there is substantial uncertainty for the Debtors and Eta regarding which of the parties' presentation of facts and arguments will prevail in the Adversary Proceeding.

Although the Debtors believe they could successfully defend against the Claims – they recognize defenses or presentation of the facts may not be sufficient to defeat Eta's Claims, as well as justify the additional administrative expense to litigate this matter. Moreover, and perhaps most importantly, Eta seeks additional treble damages against the Debtors that would significantly increase the potential liability owed by Debtors. Should Eta successfully prove at least one of the claims noted above, the Debtors may be liable for additional treble damages (beyond those remedied under this Compromise). Accordingly, the Debtors assert that this factor weighs in favor of approving the Compromise.

B. **Difficulty in Enforcement of a Judgment/Collection**

The Debtors currently hold and shall transfer ownership of all shares in Eta Compute, Inc. (estimated to be valued at $500,000.00) to Eta. Pursuant to the Settlement Agreement, the Judgments may collectively be satisfied by Debtors (or their entities) by paying $1,300,000.00. The Debtors anticipate that the sale of the 29 Lake Creek Drive property, which is presently being marketed, will yield proceeds sufficient to satisfy the Judgments. Eta already holds a second position lien interested in that property. However, in the event the sale or transfer of the 29 Lake

MOTION FOR APPROVAL OF COMPROMISE – PAGE 7
Matter: 13099-003

Creek Drive property does not produce sufficient proceeds to completely satisfy the Judgments, the remaining balance owed shall be considered unsecured and paid pursuant to a confirmed plan.

If Debtors were to prevail in the Adversary Proceeding, it will result in an order that will allow the Debtors to discharge obligations (as may be allowed and/or applicable under the Bankruptcy Code for Chapter 11 Debtors in Possession), including all or part of the debts owed to Eta. The Debtor does not believe there would be significant difficulty enforcing this order. Accordingly, this factor does not weigh either for or against approving the Compromise.

### C. **Complexity, Expense, And Delay of the Litigation**

Non-dischargeability claims, as the Court is aware, are highly factual in nature and depend, in large part, on testimony of parties and/or experts regarding numerous factors and elements, including proving intent of Debtors and the subjective belief and understanding between Debtors and Eta, related to the specific actions. While there could be some attempts to resolve the claims through motion practice, the claims will likely proceed to trial. Resolution of this matter now will avoid much of the expense of prosecuting the Adversary Proceeding, much of the cost of which has not yet been incurred by the parties. Approval of this Compromise will avoid the necessity of further discovery, motion practice, and further filings and proceedings, and a trial in the Adversary Proceeding.

The Debtors have employed counsel on an hourly-fee basis. In the event the case proceeds through litigation to trial and a potential appeal, counsel's fees will necessarily increase. Accordingly, approval of the Compromise saves on future attorney fees.

As noted, the Disclosure Statement was recently approved, and the Debtors are ready to proceed with plan confirmation and move this case forward. Currently, the Adversary Proceeding is scheduled for at minimum a 3-day trial commencing in mid-February 2020, thus requiring

extensive preparation in the coming months.  Approving this Compromise will allow the Debtors (and other parties) to focus on concluding the sale of the 29 Lake Creek Drive property and working with creditors on getting a confirmed plan which contemplates the sale of the 29 Lake Creek Drive property to satisfy the Judgments at issue here.  The Debtors believe these factors weigh in favor of approving the Compromise and is in the best interest of all parties.

D. **Paramount Interest of Creditors**

The terms of this Compromise are contemplated by and effectuate the terms of the plan as set forth in the Disclosure Statement.  Pursuant to the Disclosure Statement, the Debtors anticipate that most unsecured creditors will get paid 100% of their claims (those that aren't are nonetheless agreeing to the plan).  Notably, the Disclosure Statement and associated plan contemplate the treatment of Eta's claim and is consistent with the terms of the Settlement Agreement. Consequently, Eta and Debtors have agreed to the proposed treatment of its claim, which provides predictability to the plan and thus, to the other creditors, as the Compromise sets the secured claim amount at $1,800,000.00.  On the other hand, if the Adversary Proceeding continues to a trial, the Debtor's may be subject not only to non-dischargeability of the Judgments but also risk that such Judgments will include significant treble damages as allowed under California law.

The Compromise, if approved, provides certainty regarding the remaining assets and scope of the claims in each class.  Based on Eta's agreement to the Settlement Agreement, the Debtors believe it will likely gain a consenting classes and vote for the amended plan, rather than be faced with a confirmation battle with Eta (and other affected classes) and necessarily incurring the time and expense of defending an Adversary Proceeding.

The Debtors' stipulation to the Judgments as outlined in the Settlement Agreement is justified in the Debtors' business judgment, by the risks of going to trial and the risk that additional

treble damages will be awarded.  Approval of the Compromise will allow the Debtors to focus on the remaining issues related to confirming and executing on its plan, while maximizing available funds for the benefit of the creditors in this case.  Accordingly, the Debtors believe this factor weighs in favor of approving the Compromise.

## **CONCLUSION**

For the above-stated reasons, the Debtors assert that the proposed Compromise is a fair and equitable resolution of the matter and is in the best interests of the Debtors and their creditors. Based on the foregoing, Debtors respectfully request the Court enter an order granting the Motion and approving the Compromise.

DATED this 17th day of December, 2019.

/s/ Matt Christensen
MATTHEW T. CHRISTENSEN
Attorney for Debtors

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 20th day of December, 2019, I filed the foregoing MOTION FOR APPROVAL OF COMPROMISE electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Matthew T. Christensen | mtc@angstman.com |
| U.S. Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Lesley Bohleber | ecfidb@aldridgepite.com |
| Craig W. Christensen | cwc@racinelaw.net |
| Scott D. Goldsmith | goldsmith.scott@dorsey.com |
| Amber K. Kauffman | amber.kauffman@tax.idaho.gov |
| J. Michael Keyes | keyes.mike@dorsey.com |
| Peter J. Kuhn | peter.j.kuhn@usdoj.gov |
| Edward B. Magarian | magarian.edward@dorsey.com |
| Chad Moody | chad@angstman.com |
| Steven T. Waterman | waterman.steven@dorsey.com |
| David Wayne Newman | ustp.region18.bs.ecf@usdoj.gov |
| US Trustee | ustp.region18.bs.ecf@usdoj.gov |

Any others as listed on the Court's ECF Notice.


/s/ Matt Christensen
Matthew T. Christensen

# EXHIBIT A

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Settlement Agreement") is made as of the date of the last signature to this Settlement Agreement, by and between Eta Compute, Inc., ("Eta" or "Plaintiff") on the one hand and Timothy D. Semones ("Semones") and Susan C. Desko ("Desko") (collectively, "Defendants") on the other hand.  Together, Eta, Semones, and Desko are referred to herein as the "Parties," and each individually as a "Party."

## AGREEMENT

NOW, THEREFORE, in consideration of the promises, agreements, covenants and representations contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

1.    **Background.**

On December 12, 2018, Eta filed an action in the United States District Court for the District of Idaho (the "District Court Action"), Case No. 1:18-cv-00552-BLW, against Semones, Desko, Inphi Partners, LLC, and Susan Desko, P.C. (collectively, the "District Court Action Defendants") for money had and received (against all defendants), unjust enrichment (against all defendants), conversion (against all defendants), and breach of fiduciary duty (against Semones).  The District Court Action Defendants filed an Answer to the Complaint in that matter, denying many of the allegations in the Complaint.

On January 24, 2019, Semones and Desko filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Idaho, Case No. 19-40057-JMM (the "Bankruptcy Case").

On April 23, 2019, Eta filed an adversary proceeding against Semones and Desko in the United States Bankruptcy Court for the District of Idaho, Case No. 19-08028-JMM, asserting claims for non-dischargeability of debts Eta contend Semones and Desko owe to Eta (the "Adversary Proceeding").  On August 9, 2019, Eta filed a motion requesting leave to file a First Amended Complaint in the Adversary Proceeding.   The proposed First Amended Complaint, referenced as docket entry number 22-1, and the allegations included therein are incorporated into this Settlement Agreement by reference.

The pleadings of the Parties in the Adversary Proceeding and the District Court Action as of the date of this Settlement Agreement are referred to for a more complete statement of the positions of the Parties and are incorporated herein by reference.

1

2.      **Court Approval; Best Efforts**.  This Settlement Agreement is conditioned on, and is subject to the entry of an Order in the Bankruptcy Case approving this Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (a "9019 Order").  After the Parties have executed this Settlement Agreement, Eta will promptly file a Motion seeking entry of a 9019 Order in the Bankruptcy Case, and the Parties each agree to use their best efforts to obtain such an Order.  The date that the 9019 Order becomes final and non-appealable shall be referred to herein as the "Entry Date."  In the event a 9019 Order is not entered, or the 9019 Order is appealed and reversed, then: (a) this Settlement Agreement shall be null and void and shall be of no force or effect; (b) nothing contained in this Settlement Agreement or in any motion or proceeding (including any hearing before the Bankruptcy Court) seeking approval of this Settlement Agreement may be used in any manner or in any proceeding (including courts or claims in arbitration) by any of the Parties against any of the other Parties; and (c) to the degree possible, the Parties shall be in the same position they were in as though this Settlement Agreement had never been executed.

3.      **Stipulated Non-Dischargeable Judgment Against Semones.**   In further consideration of the mutual promises contained herein, the Parties stipulate and agree to the entry of a non-dischargeable judgment against Semones in the Adversary Proceeding as set forth in **Exhibit A** to this Settlement Agreement.

4.      **Stipulated Non-Dischargeable Judgment Against Desko.**   In further consideration of the mutual promises contained herein, the Parties stipulate and agree to the entry of a non-dischargeable judgment against Desko in the Adversary Proceeding as set forth in **Exhibit B** to this Settlement Agreement.

5.      **Stock Transfer**.  In further consideration of the mutual promises contained herein, Semones and Desko agree to transfer all their individual and collective ownership of shares in Eta to Eta within ten (10) days of the Entry Date (the "Stock Transfer").  The Parties shall execute a redemption agreement in the form set forth in **Exhibit C** to this Settlement Agreement in order to complete the transfer.

6.      **Release of Semones.**  Upon satisfaction of the judgment set forth in Exhibit A, including accrued interest on the judgment, and completion of the Stock Transfer, Eta releases and forever discharges Semones from any and all manner of action or actions, suits, claims, damages, judgments, levies and executions, whether known or unknown, liquidated or unliquidated, fixed or contingent, direct or indirect which Eta ever had, have or ever can, shall or may have against Semones for, upon or by reason of any manner, act or thing including, any claims arising from or in connection with the claims alleged in the District Court Action and the Adversary Proceeding.

7.      **Release of Desko.**  Upon satisfaction of the judgment set forth in Exhibit B, including accrued interest on the judgment, and completion of the Stock Transfer, Eta releases and forever discharges Desko from any and all manner of action or actions, suits,

claims, damages, judgments, levies and executions, whether known or unknown, liquidated or unliquidated, fixed or contingent, direct or indirect which Eta ever had, have or ever can, shall or may have against Desko for, upon or by reason of any manner, act or thing including, any claims arising from or in connection with the claims alleged in the District Court Action and the Adversary Proceeding.

8.    **Satisfaction of Judgments**.  In further consideration of the mutual promises contained herein, Eta agrees that the judgments set forth in Exhibits A and B may be collectively satisfied upon receipt of payment from Semones, Desko, Inphi Partners, LLC, and/or Susan Desko, P.C., in the amount of $1,300,000.00 on or before three (3) years from the Entry Date.

9.    **Payment.**  Any payments made in satisfaction of the judgments set forth in Exhibits A and B shall be made by wire transfer and pursuant to Eta's written wire instructions.  The parties anticipate that the payments made on the judgments will be made pursuant to a confirmed Chapter 11 Plan (as amended) in the Bankruptcy Case.  In the event the Bankruptcy Case is converted to a Chapter 7, payments shall begin sixty (60) days following the date of the order converting the case.

10.    **No Admission of Liability.**  The Parties represent and warrant to each other, that the Parties specifically understand and agree that the Parties' settlement and compromise of the claims and disputes against Semones and Desko in the District Court Action and the Adversary Proceeding is a compromise of disputed claims and that the existence of this Settlement Agreement or any judgment entered hereunder shall not be construed as an admission of liability or of the truth of the allegations, claims or contentions of any Party, and that there are no covenants, promises, undertakings or understandings between the Parties outside of this Settlement Agreement except as specifically set forth herein.

11.    **Notice.**  Any notice required to be given by this Settlement Agreement by Semones or Desko to Eta shall be given by electronic mail or by overnight courier and addressed as follows:

Dorsey & Whitney LLP
Attention: Scott D. Goldsmith, Esq.
600 Anton Boulevard
Suite 2000, Costa Mesa, CA 92626-7655
Email: goldsmith.scott@dorsey.com

Any notice required to be given by this Settlement Agreement by Eta to Semones or Desko shall be given by electronic mail or by overnight courier and addressed as follows:

ANGSTMAN JOHNSON
Attention: Matthew T. Christensen

199 N. Capitol Blvd., Ste 200
Boise, ID 83702
Email: mtc@angstman.com

12.    **Waiver.** Eta acknowledges that the laws of some jurisdictions provide that a general release does not extend to claims which are not known or suspected to exist at the time this Settlement Agreement is executed, which if known, would have materially affected the settlement, and Eta specifically waives the provisions of any similar statutory or other provision of law in the State of Idaho.

13.    **Further Assurances.**  The Parties agree that, upon the request of any of the Parties, they will execute and deliver such further documents and undertake such further action as may reasonably be required to affect any of the agreements and covenants contained in this Settlement Agreement.

14.    **Governing Law.**  This Settlement Agreement is intended to be performed in the State of Idaho and the substantive laws of such state shall govern the validity, construction, enforcement, and interpretation of this Settlement Agreement. ANY ACTION OR SUIT TO ENFORCE ANY TERM OF THIS SETTLEMENT AGREEMENT SHALL BE TRIED BY A JUDGE, SITTING WITHOUT A JURY.  BY EXECUTING THIS SETTLEMENT AGREEMENT EACH PARTY KNOWINGLY AND VOLUNTARILY WAIVES THE RIGHT TO A TRIAL BY JURY.  The Parties agree that the Bankruptcy Court may retain jurisdiction to enforce the terms of this Settlement Agreement.

15.    **Representations and Voluntary Action.** Eta, Semones, and Desko represent, warrant and agree that each has been represented by their own counsel, that they have thoroughly read and understood the terms of this Settlement Agreement, conferred with their attorney on any questions in regard to this Settlement Agreement, and have voluntarily entered into this Settlement Agreement.

16.    **Costs and Attorneys' Fees.**  The Parties agree that they will pay their own respective costs of court in the Adversary Proceeding and their own attorneys' fees incurred in connection with the Adversary Proceeding.

17.    **Counterparts.** This Settlement Agreement may be executed in any number of identical counterparts and via facsimile, electronic or digital signature, each of which shall be deemed to be an original for all purposes.

18.    **Full Agreement.**  The Parties hereto acknowledge and agree that this Settlement Agreement represents the full and complete agreement of the parties for the purposes of resolving the Adversary Proceeding, and any amendments or modifications of this Settlement Agreement must be in writing and executed by both Parties to be effective.

4

19.     **Construction.**  This Settlement Agreement shall not be construed more strictly against one Party than against the other by virtue of the fact that the Settlement Agreement may have been drafted or prepared by counsel for one of the Parties, it being recognized that all Parties to this Settlement Agreement have contributed substantially and materially to the preparation of this Settlement Agreement.

20.     **Captions.**  The titles or captions of the paragraphs or sections contained in this Settlement Agreement are inserted only as a matter of convenience and for reference, and in no way define, extend or describe the scope of this Settlement Agreement or the intent or meaning of any provision hereof.

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement effective as of the date of the last signature set forth below.

As provided by the Bankruptcy Code, a Bankruptcy Court Order approving this settlement is a condition precedent to this agreement.

**ETA COMPUTE, INC.**

By: _Ted Tewksbury_
16B750D840434FD...

Its: _Ted Tewksbury, President & CEO_

Date: _____

**TIMOTHY D. SEMONES**

By: _Timothy D. Semones_

Date: _9-28-19_

**SUSAN C. DESKO**

By: _____

Date: _9-29-19_

5

# EXHIBIT A

B 2610 (Form 2610C) (12/15)

# UNITED STATES BANKRUPTCY COURT

for the

District of Idaho

| | | |
|---|---|---|
| In re <u>Timothy D. Semones and Susan C. Desko</u> | ) | Case No. 19-40057-JMM |
| *Debtor* | ) | |
| | ) | Chapter 11 |
| <u>Eta Compute</u> | ) | |
| *Plaintiff* | ) | Adv. Proc. No. 19-08028-JMM |
| v. | ) | |
| <u>Timothy D. Semones and Susan C. Desko</u> | ) | |
| *Defendants* | ) | |

**JUDGMENT IN AN ADVERSARY PROCEEDING**

The court has ordered that:

The plaintiff, Eta Compute, Inc., recover from the defendant <u>Timothy D. Semones</u>, the amount of one million three hundred thousand dollars ($<u>1,300,000</u>) and post judgment interest at the applicable rate pursuant to 11 U.S.C. §1961.

This judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).

Date:<u>                 </u>

<u>                     </u>
HON. JOSEPH M. MEIER
CHIEF U.S. BANKRUPTCY JUDGE

# EXHIBIT B

B 2610 (Form 2610C) (12/15)

# UNITED STATES BANKRUPTCY COURT

for the

District of Idaho

| | | |
|---|---|---|
| In re <u>Timothy D. Semones and Susan C. Desko</u> | ) | Case No. 19-40057-JMM |
| *Debtor* | ) | |
| | ) | Chapter 11 |
| <u>Eta Compute</u> | ) | |
| *Plaintiff* | ) | Adv. Proc. No. 19-08028-JMM |
| v. | ) | |
| <u>Timothy D. Semones and Susan C. Desko</u> | ) | |
| *Defendants* | ) | |

## JUDGMENT IN AN ADVERSARY PROCEEDING

The court has ordered that:

The plaintiff, Eta Compute, Inc., recover from the defendant <u>Susan C. Desko</u>, the amount of one million dollars ($<u>1,000,000</u>) and post judgment interest at the applicable rate pursuant to 11 U.S.C. §1961.

This judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).

Date:_____

_____
HON. JOSEPH M. MEIER
CHIEF U.S. BANKRUPTCY JUDGE

# EXHIBIT C

# REDEMPTION AGREEMENT

**THIS REDEMPTION AGREEMENT** (this "**Agreement**") is made as of ____, 2019, by and between Eta Compute Inc., a Delaware corporation (the "**Company**"), and Timothy Semones (the "**Seller**").

## RECITALS

**WHEREAS**, Seller is the owner of 337,500 shares of the Company's Common Stock and 99,999 shares of the Company's Series Seed Preferred Stock (collectively, the "**Stock**") represented by Common Stock certificate number CS-10, and Series Seed Preferred Stock certificate numbers SSP-10 and SSP-29 (the "**Certificates**"); and

**WHEREAS**, Seller desires to voluntarily sell, and the Company desires to repurchase from Seller, all 337,500 shares of Common Stock and 99,999 shares of Series Seed Preferred Stock (the "**Purchased Shares**") in consideration for the promises, agreements, covenants and representations contained in that certain Settlement Agreement, by and among the Company, Seller, and Susan C. Desko (the "**Settlement Agreement**").

## AGREEMENT

For good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties, the parties agree as follows:

## ARTICLE 1
## SALE OF STOCK

1.1    **Purchase and Sale of Stock**.  Subject to the terms and conditions stated herein, Seller agrees to sell, assign, transfer and deliver the Purchased Shares to the Company.

1.2    **Price**.  In full consideration for the repurchase by the Company of the Purchased Shares, the Company has entered into the Settlement Agreement with Seller.

1.3    **Closing**.  Subject to the terms and conditions hereof, the closing of the repurchase provided for herein (the "**Closing**") shall take place by e-mail or facsimile transmission concurrently with the execution and delivery of this Agreement by the parties or at such other time and place as the Company and Seller mutually agree (the "**Closing Date**").  Upon the Closing Date, Seller will have no rights as a Company stockholder with respect to the Purchased Shares, including without limitation, no right to receive any dividends or other distributions with respect to the Purchased Shares.  At the Closing, Seller agrees to deliver to the Company a duly executed form of assignment in the form attached hereto as Exhibit A (the "**Assignment Separate from Certificate**") transferring the Purchased Shares to the Company.

1.4    **Further Assurances**.  Seller agrees that at any time, and from time to time, after the Closing, Seller will execute such additional instruments and take such actions as may be reasonably requested by the Company to give effect to the sale and cancellation of the Purchased Shares and to perfect or otherwise carry out the intent and purposes of this Agreement.

## ARTICLE 2
## REPRESENTATIONS OF THE SELLER

Seller hereby represents and warrants to the Company as follows:

2.1    **Title to Shares**.  Seller is the sole owner of the Purchased Shares, beneficially and of record, and has full power and authority to convey the Purchased Shares free and clear of all liens, security interests, charges, mortgages, deeds of trust, warrants, purchase rights, transfer restrictions, leases, other encumbrances and claims of every kind ("**Liens**") and, upon delivery of and payment for such Purchased Shares as herein provided, the Company will acquire good and valid title thereto, free and clear of all Liens.   Except as specifically contemplated by this Agreement, the Voting Agreement by and among the Company, Seller and certain other stockholders of the Company, as amended and/or restated and the Right of First Refusal and Co-Sale Agreement by and among the Company, Seller and certain other stockholders of the Company, as amended and/or restated, (a) Seller has not transferred or assigned, or entered into any agreement to transfer or assign, any of the Purchased Shares or any rights thereunder; (b) there is no outstanding subscription, warrant, call, unsatisfied preemptive right, commitment, option or other agreement or right of any kind to purchase or otherwise to receive or acquire from Seller any of the Purchased Shares; and (c) the Purchased Shares are not subject to any voting trust agreement or other contract, agreement, arrangement, commitment or understanding restricting or otherwise relating to the voting, dividend rights or disposition of the Purchased Shares.

2.2    **No Conflicts; Consents**.  The execution and delivery by the Seller of this Agreement does not, and the consummation of the transactions contemplated hereby and compliance by the Seller with the terms hereof will not, conflict with, or result in any violation of or default under, or result in the creation of any Lien upon the Purchased Shares under, any provision of any judgment, order or decree naming the Seller or statute, law, ordinance, rule or regulation applicable to the Seller.  No consent, approval, waiver, license, permit, order or authorization of, or registration, declaration or filing with, any Federal, state, local or foreign government or any court of competent jurisdiction, administrative agency or commission or other governmental authority or instrumentality, domestic or foreign or any other person, is required to be obtained or made by or with respect to the Seller in connection with the execution, delivery and performance of this Agreement or the consummation of the transactions contemplated hereby.

2.3    **Binding Effect of Agreement**.  This Agreement has been duly executed and delivered by Seller and is a valid and binding agreement of Seller, enforceable against Seller in accordance with its terms.

2.4    **Access to Information; Disclosure**.  Seller acknowledges that:

(a)    Seller has been given full and adequate access to information relating to the Company and its subsidiaries, including their respective business, finances and operations and the opportunity to ask questions and receive answers from the Company as Seller has deemed necessary or advisable in connection with Seller's evaluation of the sale of the Purchased Shares to the Company.  Seller has entered into this Agreement based on its own knowledge, investigation and analysis and that of it advisors.  Seller has not relied upon any representations or statements made by any of the Company or its agents, officers, directors,

2

employees or stockholders in regard to the advisability of this decision or the potential future value of the Purchased Shares.

(b) Seller has such knowledge and experience in financial and business matters to be capable of evaluating the merits and risks of selling the Purchased Shares to the Company at the price and on the terms set forth in <u>Article 1</u> hereof, or has the benefit of the business and financial experience of its professional advisors who are unaffiliated with the Company, and who are not compensated by the Company.

(c) Seller understands that the Company has from time to time explored, and will continue to explore, exit strategies, including, without limitation, merger, consolidation and similar transactions. Seller understands that any future sale of shares of the Company's capital stock could be at a premium or a discount to the effective price per share represented by this Agreement and the Settlement Agreement, and such sale could occur at any time or not at all.

(d) Seller acknowledges that the Company and its affiliates may be in possession of material non-public information not known to the Seller (the "**Excluded Information**"). The Seller agrees that neither the Company nor its affiliates is obligated to disclose any Excluded Information or have any liability to the Seller with respect to any such non-disclosure.

(e) Seller understands that the Company will rely on the accuracy and truth of the foregoing representations and would not enter into this Agreement in the absence of these representations, and the Seller hereby consents to such reliance.

2.5 **Voluntary Agreement**. Seller is entering into this Agreement of Seller's own volition, and without relying upon any representations of the Company or the Company's officers, directors, attorneys, affiliates, owners, shareholders or employees, past or present.

2.6 **Legal Counsel**. Seller has had the opportunity to consult with counsel of Seller's choice regarding the meaning and legal effect of this Agreement and the advisability of making the agreements provided for herein, and Seller fully understands the same. Seller has reviewed with Seller's own tax advisors the federal, state, local and foreign tax consequences of this investment and the transactions contemplated by this Agreement. Seller is relying solely on such advisors and not on any statements or representations of the Company or any of its agents with respect to tax consequences. Seller understands that Seller (and not the Company) will be responsible for any tax liability that may arise as a result of the transactions contemplated by this Agreement.

**ARTICLE 3**
**RELEASE OF CLAIMS**

3.1 **Release of Claims; Covenant Not to Sue**. Except for those obligations, rights and remedies created by or arising out of this Agreement, Seller, on behalf of Seller's successors, heirs, and assigns, hereby fully and forever releases and discharges the Company and any of its parent corporations, subsidiaries (whether or not wholly-owned), brother-sister corporations, and all other affiliated or related corporations and entities, and each of their respective present and former officers, directors, agents, employees, representatives, administrators, accountants, attorneys, investigators, insurers, partners, associates, successors, and assigns, in any and all capacities (including but not limited to the fiduciary, representative or individual capacity of

3

any released person or entity), and any entity owned by or affiliated with any of the above (collectively, the "**Releasees**") from, and covenants not to sue or otherwise institute or cause to be instituted any legal or administrative proceedings with respect to, any and all claims, demands, liens, actions, agreements, suits, causes of action, obligations, controversies, debts, costs, attorneys' fees, expenses, damages, judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise, whether or not now known or suspected, that have existed or may have existed, or that do exist or that hereafter may exist, based on any facts, events or omissions occurring from any time on or prior to the execution of this Agreement, including with respect to the repurchase of the Purchased Shares or the acquisition or ownership of the Purchased Shares.  Seller acknowledges that there is a possibility that Seller will discover facts or incur or suffer claims with respect to such released claims that were unknown or unsuspected at the time this Agreement was executed, and that if known by such Seller at that time may have materially affected Seller's decision to execute this Agreement.  Seller acknowledges and agrees that, because of this Agreement, Seller is assuming any risk of such unknown facts and such unknown and unsuspected claims.  It is the intention of Seller, through this Agreement and with the advice of counsel, fully and finally to settle and release all such matters, and all claims relative thereto, that do now exist, may exist, or have existed between the parties hereto.  Seller further understands and agrees that all rights under Section 1542 of the Civil Code of California ("Section 1542") and any similar law of any state or territory of the United States that may be applicable with respect to the foregoing release are hereby expressly and forever waived.  Seller acknowledge that Section 1542 provides that:  "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

     3.2    **No Pending Claims**.  Seller represents that Seller has not filed or assigned any claims, charges, complaints or actions against the Company and has no knowledge of any claims, charges, complaints or actions against the Company, except as related to the Settlement Agreement.

**ARTICLE 4**
**MISCELLANEOUS**

     4.1    **Expenses**.  The parties hereto will pay their own respective expenses, including the fees and disbursements of their respective counsel in connection with the negotiation, preparation and execution of this Agreement and the consummation of the transactions contemplated hereby.

     4.2    **Survival of Representations and Warranties**.  All of the representations and warranties of Seller contained in this Agreement will survive the execution and performance of this Agreement.

     4.3    **Entire Agreement**.  This Agreement, the Settlement Agreement and the Assignment Separate from Certificate attached hereto constitute the entire agreement of the parties with respect to the subject matter hereof, and may not be modified, amended or terminated except by a written instrument specifically signed by each of the parties hereto.

     4.4    **Waivers and Consents**.  Any waiver or consent given hereunder must be in writing to be effective.  No waiver by any party hereto of any breach or anticipated breach of

4

any provision hereof by any other party will be deemed a waiver of any other contemporaneous, preceding or succeeding breach or anticipated breach, whether or not similar, on the part of the same or any other party.

4.5     **Notices**.  All notices and other communications hereunder must be made in writing and will be deemed to have been given only if and when (i) personally delivered or (ii) three days after mailing, postage prepaid, by certified mail or (iii) when delivered (and receipted for) by an overnight delivery service, addressed in each case to the parties at the respective addresses set forth on the signature page hereto.  Seller and the Company may change the address(es) for the giving of notices and communications to it, and/or copies thereof, by (a) written notice to the other parties in accordance with this Section, (b) by confirmed electronic mail.

4.6     **Governing Law**.  The interpretation and construction of this Agreement will be governed by the laws of the State of California without taking into account conflict of law principles.

4.7     **Counterparts**.  This Agreement may be executed in 2 or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.  Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered will be deemed to have been duly and validly delivered and be valid and effective for all purposes.

*[SIGNATURE PAGE FOLLOWS]*

4819-7143-2356\2

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Redemption Agreement, all as of the day and year first above written.

**COMPANY:**

**ETA COMPUTE INC.**

Sign:_____
Name:
Title:

Address:

**SELLER:**

Sign:_____

Name: <u>Timothy Semones</u>_____

Address:_____

_____

Email:_____

[SIGNATURE PAGE TO STOCK REPURCHASE AGREEMENT]

4819-7143-2356\2

## Exhibit A

**ASSIGNMENT SEPARATE FROM CERTIFICATE**

The undersigned, Timothy Semones, hereby irrevocably assigns and transfers unto Eta Compute Inc., a Delaware corporation (the "**Company**") an aggregate of 337,500 shares of the Company's Common Stock and 99,999 shares of the Company's Series Seed Preferred Stock (collectively, the "**Purchased Shares**") represented by Common Stock certificate number CS-10, and Series Seed Preferred Stock certificate numbers SSP-10 and SSP-29 (the "**Certificates**"), and does hereby irrevocably constitute and appoint the Secretary of the Company as attorney-in-fact to transfer said stock on the books of the Company with full power of substitution in the premises.

The undersigned hereby agrees to defend and indemnify the Company, its agents, attorneys, accountants, officers and directors and hold them harmless from any damage or loss caused by or in any way related to any stock certificates representing the Purchased Shares that are not returned to the Company in connection with this transfer.  In the event of discovery of any original certificate(s), the undersigned agrees to promptly return it to the Company marked "cancelled."

Dated: _____, 2019

Sign:_____
Print Name: Timothy Semones

[EXHIBIT A TO REDEMPTION AGREEMENT]

4819-7143-2356\2