Matthew T. Christensen, ISB: 7213
Chad R. Moody, ISB: 9946
ANGSTMAN JOHNSON
199 N. Capitol Blvd, Ste 200
Boise, ID 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@angstman.com
        chad@angstman.com

Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>TIMOTHY D. SEMONES and SUSAN C. DESKO,<br><br>　　　　　　　Debtors. | Case No. 19-40057-JMM<br><br>Chapter 11 |

## FOURTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION

The Debtors, Timothy D. Semones ("Semones") and Susan C. Desko ("Desko"), and hereby submit their Fourth Amended Plan of Reorganization (the "Plan" or "Plan of Reorganization").

## ARTICLE l - DEFINITIONS

1.1 <u>Definitions.</u>  The capitalized terms used herein shall have the respective meanings as set forth below.

(a) "Allowed" Claim shall mean claim as allowed pursuant to 11 U.S.C. §502.

(b) "Bankruptcy Court" shall mean the United States Bankruptcy Court.

(c) "Debtors" shall mean the Debtors-in-possession, as identified in the caption.

(d) "Claim(s)" shall mean claim, as defined in 11 U.S.C. § 101(5).

(e) "Confirmation" shall mean approval of the Plan by order of the Bankruptcy Court pursuant to 11 U.S.C. §§ 1128 and 1129.

(f) "Distribution Date" shall mean the tenth (10th) day after the date upon which the Confirmation Order becomes final and non-appealable. The Confirmation Order becomes final and non-appealable fourteen (14) days after the Confirmation Order is entered, if no appeal is filed, and after the conclusion of any appeal, if any party does appeal the entry of the Confirmation Order.

(g) "Effective Date" shall mean the date upon which the court enters its Confirmation Order.

## ARTICLE 2 - CLASSIFICATION OF CLAIMS

2.1     The Debtors' Plan of Reorganization provides for administrative expenses and establishes classes for claims. Those classes are:

1.  Secured Claim of Wells Fargo Bank (secured by first-position lien on real property located at 105 Madison Ave)
2.  Secured Claim of Wells Fargo Bank (secured by second-position lien on real property located at 105 Madison Ave)
3.  Secured Claim of Wells Fargo Auto Finance (secured by first-position lien on 2005 Mercedes)
4.  Secured Claim of United Bridge Capital (unsecured as to Debtors, but secured by first-position lien on real property located at 29 Lake Creek)
5.  Secured Claim of Eta Compute, Inc. (unsecured as to Debtors, but secured by second-position lien on real property located at 29 Lake Creek)
6.  Claims for Priority Taxes
7.  Claim of Banatao Living Trust
8.  General Unsecured Claims

## ARTICLE 3 - UNIMPAIRED AND IMPAIRED CLASSES OF CLAIMS

3.1     Unimpaired Classes. Class 3 – the secured claim of Wells Fargo Auto Finance.

3.2     Impaired Classes. All remaining classes are impaired under this Plan.

## ARTICLE 4 - ADMINISTRATIVE EXPENSES

Each holder of an allowed administrative expense shall receive the fully allowed amount of such claim in cash at confirmation or as otherwise agreed.  The Bankruptcy Court will review and allow, in an amount it believes appropriate, any application for approval of compensation for professionals, including attorneys, accountants, real estate appraisers or other professionals.  The cost of those professional services is unknown at this time.  The amount of compensation approved by the bankruptcy court for those professional services shall be paid as an administrative priority claim.

Until compensation for a professional is approved, Debtors are prohibited from making any payment from funds of the estate on those fees.   Debtors shall submit an application for approval of compensation at an appropriate time, and shall give notice to all interested parties of any application for compensation.

To the extent that the Debtors have fees and costs due to more than one professional, each professional shall have equal priority with other professionals.  These fees and costs shall be paid in full before any payment is due or is made to any other unsecured claim.  *See 11 U.S.C. §1129(a)(9).*

To the extent Debtors do not have funds on hand or in bank accounts from which to pay professional fees and costs approved by the Court and not paid from a retainer, Debtors will pay the professional fees and costs from funds otherwise to be used to pay holders of unsecured claims until paid in full.  These funds may come from the funds that would otherwise be used to pay priority tax claims and general unsecured claims.  To the extent that Debtors do pay an allowed

administrative expense, the payment to priority tax claims or unsecured creditors not paid previous to that date may be delayed.

As of the date of filing of this Plan, Debtors have an attorney whose employment was approved, Angstman Johnson.  That firm currently holds some funds in a client trust account to be applied towards any awards of compensation for those attorneys.  No other professionals have been employed in this case.

Pursuant to 28 U.S.C. § 1930(a)(6), the Debtors are obligated to pay quarterly fees to the United States Trustee during the pendency of the chapter 11 case until a plan is confirmed.  The United States Trustee's quarterly fees are an administrative expense, and any unpaid allowed US Trustee fees shall be paid on the Effective Date of the plan by virtue of 11 U.S.C. § 1129(a)(12).  The Debtors shall pay, when due, all quarterly fees incurred from the date of confirmation until the case is closed by the Court, converted or dismissed, whichever occurs first.  The Debtors currently dispute certain United States Trustee's fees assessed by the U.S. Trustee.  The disputed fees will be paid once allowed by the Court.

### ARTICLE 5 - PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS

The Debtors propose to treat the classes as follows:

A.  CLASS 1:      This class consists of a secured claim by Wells Fargo Home Mortgage in the approximate petition-date amount of $459,400.00.  This claim is secured by a first-position lien on the Debtors' residence.  The Debtors participated in payment forebearance allowed by Wells Fargo as a result of the COVID-19 virus.  The treatment of this Class 1 Claim of Wells Fargo will be pursuant that Claim Stipulation between the parties, a copy of which attached hereto as *Exhibit 1* and fully incorporated

herein by this reference.  Payments to Wells Fargo shall be made "outside" the Debtors'

bankruptcy plan, and not considered part of their Plan approved by the court.  Wells

Fargo shall retain its lien securing the claim, until the remaining amount due under the

loan agreement (as modified by this Plan) is paid, at which time the lien shall be

released.

B.  CLASS 2:    This class consists of a secured claim by Wells Fargo Home

Mortgage in the approximate petition-date amount of $102,000.00.  This claim is

secured by a second-position lien on the Debtors' residence.  The Debtors participated

in payment forebearance allowed by Wells Fargo as a result of the COVID-19 virus.

The treatment of this Class 1 Claim of Wells Fargo will be pursuant that Claim

Stipulation between the parties, a copy of which attached hereto as *Exhibit 1* and fully

incorporated herein by this reference.  Payments to Wells Fargo shall be made

"outside" the Debtors' bankruptcy plan, and not considered part of their Plan approved

by the court.  Wells Fargo shall retain its lien securing the claim, until the remaining

amount due under the loan agreement (as modified by this Plan) is paid, at which time

the lien shall be released.

C.  CLASS 3:    This class consists of a secured claim by Wells Fargo Auto

Finance in the approximate amount of $5,300.00.  This claim is secured by a first-

position lien on the Debtor's 2005 Mercedes.  The Debtors have continued payments

on this claim after the initial bankruptcy petition was filed, and this claim has been fully

paid through regular payments.  The Debtors do not propose any further payments to

this class, and expect Wells Fargo to shortly release the lien on the vehicle.

FOURTH AMENDED CHAPTER 11 PLAN – PAGE 5
Matter: 13099-001

Unless outlined differently above, payments to the above Classes will begin on the Distribution Date. All of these creditors hold claims secured by the collateral identified. Unless stated otherwise above or ordered by the Court, each creditor shall retain its lien on its collateral until such time as its allowed, secured claim is paid in full. Once a secured claim is paid in full, that creditor will have no further claim against the Debtors, and it shall take all steps necessary to release any and all liens it may have.

D. <u>CLASS 4:</u>    This class consists of a previously-secured claim by United Bridge Capital in the approximate amount of $2,221,000.00. This claim was secured by a first-position lien on real property located at 29 Lake Creek. The real property was owned by Inphi Partners, LLC, a company owned by the Debtors. The Debtors' direct liability on this loan is via a personal guaranty, which is unsecured as to the Debtors. Inphi Partners, LLC, previously marketed and sold the real property securing this claim. The sale of the property fully paid the debt to United Bridge Capital, thus releasing both Inphi Partners, LLC, and the Debtors from any further liability. The Debtors do not propose any payment to this class.

E. <u>CLASS 5:</u>    This class consists of a secured claim by Eta Compute, Inc., in the approximate amount of $1,800,000.00. This claim was secured by a second-position lien on real property located at 29 Lake Creek. The real property was owned by Inphi Partners, LLC, a company owned by the Debtors. The Debtors' direct liability on this loan is unsecured. Inphi Partners, LLC, previously marketed and sold the real property securing this claim. The sale of the property and transfer of Eta Compute stock fully paid the debt to Eta Compute, Inc., on this claim. Pursuant to a court-approved compromise, the Debtors previously transferred ownership of all shares in

Eta Compute, Inc. to Eta Compute, Inc.  These two payments (stock and payment by Inphi Partners) fully paid this claim, thus releasing both Inphi Partners, LLC, and the Debtors from any further liability.  The Debtors do not propose any further payment to this class.

      F.  <u>CLASS 6:</u>           After payment of any administrative priority expenses approved by the Court, see above, Debtors will pay the Idaho State Tax Commission and Internal Revenue Service for any allowed pre-petition taxes, in full from funds in the Debtor-in-possession accounts, pursuant to 11 U.S.C. §1129(a)(9)(C).  However, in the event the Debtors do not have sufficient funds in the Debtor-in-Possession accounts on the Distribution Date to pay these claims in full, the Debtors shall make regular monthly payments to these creditors (starting on the Distribution Date) in the amount of $4,750.00 per month for as many months necessary until this claim is paid in full.  In the event this claim is not paid in full on the Distribution Date, it shall accrue interest at the rate of 5% per annum, and shall be paid within sixty (60) months of the Petition Date.

      G.  <u>CLASS 7:</u>    This class consists of the presently-unsecured claim of Banatao Living Trust.  Banatao was originally a creditor with a security interest in the 29 Lake Creek property that was sold by Inphi Partners.  The United States Marshall currently holds the proceeds from that sale, in the amount of approximately $191,000.00.  All rights of the Debtors to recover those proceeds held by the United States Marshall shall be assigned to Banatao Living Trust, and the Debtors will assist Banatao in recovering those proceeds from the United States Marshall.  Other than this

potential recovery of $191,000.00, the Debtors do not propose any further payment to Banatao Living Trust.  Banatao Living Trust has agreed to this Plan treatment.

H.  CLASS 8:      This class consists of unsecured claims of general unsecured creditors (excluding Banatao Living Trust).  Debtors will make payments, pro rata, to holders of general unsecured claims.  The funds for payments to this class shall be from two sources.  First, the Debtors will liquidate certain personal property and use the proceeds to pay this class.  Second, the Debtors will make payments to this class from regular monthly income of the Debtors.  These monthly-income payments will be $4,750 per month if Mr. Semones remains not incarcerated and otherwise able to work. In the event Mr. Semones is incarcerated, these payments will be $500.00 per month while he is incarcerated and will increase to $4,750.00 three (3) months after Mr. Semones' release  The Debtors anticipate that, upon the final payments under this Plan, the holders of general unsecured claims in this class will receive 100% of their allowed claims.  To the extent the Debtors are unable to fully pay any allowed priority tax claims immediately after confirmation, the payment to general unsecured claims will be delayed.  (At this point, the Debtors do not anticipated any unpaid priority tax claims. Nevertheless, if such claims exist on the Effective Date, notice will be provided to creditors in this class, along with the Debtors' estimate of when monthly plan payments will begin.)    Claims in this class shall accrue interest at either (a) a negotiated rate between the Debtor and creditor, or (b) 3% per annum, whichever is lower, beginning on the Effective Date of the Plan.

The Debtors currently hold minimal funds in DIP accounts.  Upon confirmation, the Debtors will begin making monthly payments pro rata to unsecured creditors (including all

creditors in Class 7) beginning on the Effective Date.  Upon confirmation, the Debtors will (in the order listed and until all unsecured creditors are paid in full): (a) liquidate their Porsche, Hummer, and Harley vehicles and pay the net proceeds to the remaining unsecured creditors; and (b) continue monthly payments until all remaining unsecured creditors are paid in full.

### ARTICLE 6 - SECURITIES TO BE ISSUED PURSUANT TO THIS PLAN

6.1  No securities will be issued pursuant to this Plan.

### ARTICLE 7 - ACCEPTANCE OR REJECTION OF PLAN

7.1  <u>Classes Entitled to Vote.</u>  All holders of Allowed Claims shall be entitled to vote individually by class to accept or reject this Plan.

7.2  <u>Requirements for Acceptance of Plan  by Classes.</u>  A class of claims shall have accepted this Plan if it is accepted by the holders of Allowed Claims of at least two-thirds (2/3) of the total amount of the Allowed Claims held by those in the class who voted and more than one-half (1/2) in number of the total number of those in the class who voted.

7.3  <u>Cram Down.</u>  In the event that any impaired Class fails to accept this Plan in accordance with Section 7.2, above, the Debtors reserve the right to request the Bankruptcy Court to confirm this Plan pursuant to 11 U.S.C. §1129(b).

### ARTICLE 8 - MEANS FOR IMPLEMENTING THE PLAN

8.1 <u>Source of Payments.</u>  The Debtors will make chapter 11 plan payments by using their income generated from all sources and through liquidation and sale of the other assets held by the Debtors, as outlined above.  Additionally, the Debtors will cooperate with Banatao in its efforts to

release the funds held by the US Marshal.  The Debtors will liquidate the vehicles described above

(Porsche, Hummer and Harley vehicles) within ninety (90) days of the Effective Date of the Plan,

and will pay the net proceeds to Class 8 within thirty (30) days of the liquidation of the vehicles.


## ARTICLE 9 - PROVISIONS GOVERNING DISTRIBUTIONS

9.1  <u>Date of Distributions.</u>  Under this Plan, distributions of cash shall be made as provided

for herein, or as otherwise may be ordered in writing by the Bankruptcy Court.

9.2  <u>Cash Payments.</u>  Cash payments required by this Plan may be made by check drawn

on a domestic bank.

9.3  <u>Time Bar to Payments by Check.</u>  Checks issued by the Debtors in payment of Allowed

Claims shall become null and void if not presented for final payment within ninety (90) days of

the date of issuance thereof.  After such date, any Claim on account of which such an instrument

was issued shall be discharged and forever barred.


## ARTICLE 10 - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1  <u>Assumed If Not Rejected.</u>  The following contracts and leases subject to the

provisions of 11 U.S.C. §365 hereby are specifically assumed:  **NONE.**

10.2  <u>Bar to Rejection Damages.</u>  If the Debtors' rejection of any executory contract or

unexpired lease produces an Allowed Claim for damages, such Claim, if not theretofore evidenced

by a filed proof of claim, shall forever be barred and unenforceable against the Debtors or their

property unless such a proof of claim is filed with the Bankruptcy Court and served upon counsel

for the Debtors by the later of thirty (30) days after the Distribution Date or thirty (30) days after

entry of the final order allowing rejection of such contract or lease.

## ARTICLE 11 - PROCEDURES FOR RESOLVING
## CONTESTED AND CONTINGENT CLAIMS

11.1  Objection Deadline.  As soon as is practicable, but in no event later than six (6)

months after the Distribution Date, all objections to Claims shall be filed with the Bankruptcy

Court and served upon the holder of each objected-to Claim.

11.2  Prosecution of Objections.  The Debtors shall litigate to judgment, settle or withdraw

any objection made to contested Claims.

11.3  No Distribution Pending Allowance.  Notwithstanding any other provision of the

Plan, no payment or distribution shall be made with respect to all or any portion of a contested

Claim unless and until any objection to such contested Claim shall have been determined by final

order of the Bankruptcy Court.

11.4  Treatment of Contingent Claims.  Except as otherwise stated herein, until such time

as a contingent Claim becomes fixed and absolute, such Claim shall be treated as a contested Claim

for purposes of estimation, allocation and distribution.

## ARTICLE 12 - MISCELLANEOUS PROVISIONS

12.1  Prepayment. The Debtors shall have the right at any time to prepay, without penalty,

all or any portion of an Allowed Claim.

12.2  Compliance With Tax Requirements.  The Debtors shall comply with all withholding

and reporting requirements imposed by federal, state, local and foreign taxing authorities to the

extent that any payment or distribution under this Plan shall be subject to any such requirement.

12.3 <u>Compliance With All Applicable Laws.</u>  In the implementation of the provisions of this Plan, the Debtors shall comply with every applicable law, rule, regulation or order; provided that nothing contained herein shall require such compliance where the legality or applicability of any such law, rule, regulation or order is being contested by the Debtors in appropriate proceedings in good faith and, if required, for which an adequate reserve has been set aside.

12.4 <u>Set-offs.</u>  The Debtors may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim that the Debtors may have against such holder.

12.5 <u>Discharge of the Debtors.</u>  All payments and distributions made by the Debtors under this Plan shall be in exchange for and in complete satisfaction, discharge, release and cancellation of, all Claims of any nature whatsoever concerning the Debtors or any of their assets or properties. Except as otherwise provided herein, upon the entry of an Order of Discharge at completion of the Plan or otherwise, the Debtors shall be deemed discharged and released from all claims pursuant to 11 U.S.C. §1141(d)(5)(A), including but not limited to demands and liabilities that arose before the filing of the Petition and all debts of the kind specified in 11 U.S.C. §§502(g), 502(h) and 502(i), whether or not (I) a proof of claim based upon such debt is filed or deemed filed under 11 U.S.C. §501; (ii) a Claim based upon such debt is Allowed; or (iii) the holder of a Claim based upon such debt has accepted this Plan.  Debtors may seek, but do not anticipate seeking, a discharge before completion of the plan, after notice to all interested parties and after a hearing.

12.6. <u>Appointment of Disbursing Agent.</u>  The Debtors shall be the disbursing agents for the estate.

12.7.  <u>Sale of Property</u>.  At any time during the term of this Plan, the Debtors may sell property when the Debtors deem the sale expedient.  The sale proceeds may be applied to the secured portion of the appropriate secured creditor's claim thereby reducing the amount of the payments to such creditor by the amount of the sale proceeds.

12.8.  <u>Retention of Property</u>.  The Debtors shall retain all property of the estate, except such personal property that is not needed by the Debtors for an effective reorganization.  Property that is not needed will be abandoned or sold and the proceeds applied to the appropriate secured creditor's claim, whichever is deemed appropriate by the Debtors.

12.9.  <u>Execution of the Plan</u>.  The Debtors shall adhere to the payment and distribution schedules described within this Plan.

12.10.  <u>Post-filing Indebtedness</u>.  No post-filing indebtedness, other than what has been set forth in this Plan, has been incurred by the Debtors which indebtedness is in arrears or is not current.

12.11.  <u>Adversary Proceedings</u>.  The Debtors reserve the right to begin or continue any adversary proceedings permitted under Title 11 of the United States Code.

12.12.  <u>Use of Cash Collateral and Additional Secured Debts</u>.  The Debtors may continue to use cash collateral (to the extent any creditor claims that they have an interest in any cash collateral) in their day-to-day affairs and payment of various secured debts, provided their plan payments are current.  The right to use cash collateral shall terminate if the Debtors do not make the payments stated above, and continued use shall be allowed only when the payments are brought current.  The Debtors also reserve the right to seek authorization to incur secured debts in accordance with 11 USC §364(c) and (d) of the Bankruptcy Code.

12.13. <u>Vesting of Property of the Estate</u>.  Upon confirmation, all property of the bankruptcy estate shall revest with the Reorganized Debtors and the bankruptcy estate shall cease to exist.  In the event of a later conversion to Chapter 7, the property shall re-vest with the Chapter 7 bankruptcy estate, subject to any exemption claims or other applicable provisions of the Bankruptcy Code.

## ARTICLE 13 - CONSUMMATION OF PLAN

13.1   <u>Retention of Jurisdiction</u>.  The court will retain jurisdiction under this Plan until this Plan has been fully consummated, including but not limited to the following purposes:

A.     Classification of the claim of any creditor and the re-examination of the claims which have been allowed for the purposes of voting, and the determination of such objections as may be filed to the creditors claims.  The failure by the Debtors to object or examine any claim for the purposes of voting shall not be deemed a waiver of the Debtors' right to object to allowance thereafter.

B.     Determination of all core proceedings.

C.     The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

D.     The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

E.     To enforce and interpret the terms and conditions of this Plan.

F.   Entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtors and to impose such limitations, restrictions, terms and conditions as this court may deem necessary.

G.   Entry of all necessary orders, judgments and decrees.

H.   Entry of an order concluding and terminating this case.

13.2   <u>Withdrawal of Plan.</u>   The Debtors reserve the right to revoke and withdraw this Plan prior to Confirmation.  If the Debtors revoke or withdraw this Plan, or if Confirmation of this Plan does not occur, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further or other proceedings involving the Debtors.

/

/

/

/

/

/

/

/

/

/

/

/

## ARTICLE 14 – CONCLUSION

The Debtors have given every thought to the complex problems confronting them and their changing situations, and with the assistance of their counsel have devised and formulated this Plan. This Plan is respectfully submitted with the hope that its equity and fairness will be considered by all parties in interest, whose consent is necessary to perfect it.  It is further hoped that all creditors will join in an affirmative vote for the Plan in order that they, as well as the Debtors, will receive the maximum benefits to be derived therefrom.  The Debtors have not audited the claims or other figures; however, this Plan and the approved Disclosure Statement are as accurate as is feasible under the circumstances.

DATED: December 15, 2020.

   /s/ Timothy Semones                                   /s/ Susan Desko

Timothy Semones, Debtor                        Susan Desko, Co-Debtor

    /s/ Matt Christensen
Matthew T. Christensen, Attorney for the Debtors

# EXHIBIT 1

1  JESSE A.P. BAKER (SBN 8411)
   **ALDRIDGE | PITE, LLP**
2  4375 Jutland Drive, Suite 200
   P.O. Box 17933
3  San Diego, CA 92177-0933
   Telephone: (858) 750-7600
4  Facsimile: (619) 590-1385

5  Attorneys for Secured Creditor:
   Wells Fargo Bank, N.A.

6

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO (TWIN FALLS)

| | |
|---|---|
| In re | Case No. 19-40057-JMM |
| TIMOTHY D. SEMONES and SUSAN C. SEMONES, | Chapter 11 |
| Debtors and Debtors in Possession. | **CLAIM TREATMENT STIPULATION UNDER CHAPTER 11 PLAN** |
| | **Class 1** |
| | **Subject Property:** |
| | 105 Madison Avenue |
| | Blaine County, ID 83340 |
| | [1st DOT] |
| | **Hearing**: |
| | Date:  December 15, 2020 |
| | Time:  1:30 p.m. |
| | Place:  U.S. Federal Building |
| | Judge: Hon. Chief Joseph M. Meier |

This Claim Treatment Stipulation ("Stipulation") is entered into by and between Secured Creditor Wells Fargo Bank, N.A. ("Creditor"), and Debtors, Timothy and Susan Semones ("Debtors"), by and through their respective attorneys of record.

The property which is the subject of this matter is commonly known as 105 Madison Avenue, Blaine County, ID 83340 (hereinafter the "Subject Property").

**The Claim**:

The Loan is evidenced by a promissory note dated July 18, 2003, executed by Debtors to Wells Fargo Home Mortgage, Inc. ("Lender") in the principal sum of $714,000.00 (the "Note"). The Note is indorsed to blank. A copy of the Note is attached to Creditor's Proof of Claim, which is

1  incorporated hereby by this reference. (*See, Claim No.11-1*).

2      The Note is secured by a 1ˢᵗ Deed of Trust against Subject Property  (*See, Claim No.11-1*).

3  The Deed of Trust was duly recorded.  The Note and Deed of Trust may be referred to collectively

4  herein as the "Loan."  On or about May 10, 2004, Lender merged with and into Wells Fargo Bank,

5  N.A.  (*Id*.)

6  **The Bankruptcy Case**:

7      On January 1, 2019, Debtors filed a voluntary petition for relief under Chapter 11 of the

8  Bankruptcy Code in the United States Bankruptcy Court for the District of Idaho –Twin Falls

9  Division and assigned Case No. 19-40057-JMM.

10     According to Debtors' Petition and Schedules, the Subject Property is identified as the

11  Debtors' principal residence.  (*See*, Dkt. No.1).

12     Creditor filed a Proof of Claim against the Debtors' Bankruptcy Estate in the amount of

13  $486,875.35, secured by the Subject Property, with $250.74 in pre-petition arrears.  ((*See, Claim*

14  *No.11-1*).

15     On May 21, 2020, Creditor filed a Notice of Request for Mortgage Forbearance for 90 days

16  Due to Covid-19 with the Court ("Covid Forbearance").  (*See*, Dkt. No.121).  Per the Covid

17  Forbearance, Debtors were provided a 90 day forbearance as to their monthly mortgage payments

18  commencing April 1, 2020, through June 1, 2020. (*Id*.).  Though not filed with the Court, Creditor

19  has extended the Debtors' Covid Forbearance through December 31, 2020, with payments to resume

20  on January 1, 2021.

21     On November 6, 2020, Debtors filed their 4ᵗʰ Amended Chapter 11 Disclosure Statement

22  ("Disclosure Statement") and 3ʳᵈ Amended Plan of Reorganization Dated ("Plan").  *See, Dkt.*

23  *Nos.151, and 150, respectively*.  Creditor's Claim is the Class 1 Impaired Secured Claim.  The Plan

24  states Debtors are not in default on this loan, but took advantage of a payment deferral program

25  offered by Creditor in light of the Covid-19 pandemic, and future payments will be paid directly to

26  Creditor. These payments to Creditor shall be made "outside" the Debtors' bankruptcy plan, and not

27  considered part of their Plan approved by the court. Creditor shall retain its lien securing the claim,

28  until the remaining amount due under the loan agreement is paid, at which time the lien shall be

released. The Plan further provides that any payments deferred in 2020 shall be added to the end of the existing loan term of Creditor's loan.

On November 13, 2020, Creditor filed an Objection to Debtors' Disclosure Statement and Plan regarding the proposed treatment as it sought to improperly modify Creditor's Claim in violation of Section 1123(b)(5) and to clarify the forbearance period actually granted.  (*See*, Dkt. No.156).  This Stipulation is to address the issues raised in Creditor's Objection and resolve the treatment of Creditor's Claim.

**THE PARTIES STIPULATE AS FOLLOWS:**

1.    Creditor's claim (is successors and/or assigns), secured by the Subject Property shall be fully secured, paid in full and Debtors' Plan shall not alter or modify the legal, equitable, and contractual rights under the Loan ("Secured Claim").  Creditor's Secured Claim shall be impaired pursuant to 11 U.S.C. §1124 solely to the extent that Debtors shall cure the contractual/forbearance arrears as set forth herein.

2.    Contractual Payments (Includes Escrow).  Debtors shall tender regular monthly contractual payments to Creditor on the first day of each month for the Secured Claim commencing January 1, 2021 and continuing on the first day of each month thereafter until the Maturity Date under the Loan when all outstanding amounts owed on the Secured Claim, including any escrow payments and/or charges as required per the terms and provisions of this Stipulation and/or the Loan, are to be paid in full.  The amount of the contractual monthly payment of principal, interest and escrow will be $4,075.90.  The Debtors understand this payment is subject to change per the Loan and/or any escrow analysis of Creditor (and/or its servicer), including subsequent to this Stipulation.

3.    Cure of Contractual and/or Forbearance Arrears.

3.1    Debtors shall cure the total contractual and/or forbearance arrears owing on Creditor's claim through December 31, 2020 in the amount of $38,602.70 in equal monthly installments over 48 months.  Debtors shall commence the contractual/forbearance payments in the amount of $804.23, commencing on the first day of the first month following entry of the Order Confirming Debtors' Chapter 11 Plan, and continuing on the first day of each month thereafter for a period of 47 months thereafter at which time any and/all remaining

contractual/forbearance arrears must be paid in full. Debtors will need to send the contractual/forbearance payments as a separate payment so these can be tracked. If the Debtors seek to sell or refinance the Subject Property any time prior to curing the contractual/forbearance arrears as set forth herein, all outstanding contractual/forbearance arrears must likewise be paid in full at the time of any such sale and/or refinancing.

3.2     The parties agree that in the event Creditor grants Debtors any further Covid Forbearance extensions subsequent to entering into this Stipulation, the parties shall promptly file an Amended Claim Stipulation to reflect any changes to the new Covid Forbearance period, re-commencement of the regular contractual monthly payments of principal, interest and escrow, as well as the updated amount of total contractual arrears/forbearance arrears that must then be cured, which Debtors will note in any Chapter 11 Plan per paragraph 11 below.

3.3.     Notwithstanding the foregoing, if Debtors miss any regular contractual payment after January 1, 2021, or as required under any additional Covid 19 Forbearance period noted by amendment to this Stipulation,, said missed payment shall not be subject to this paragraph 3, but instead shall be considered a default under this Stipulation and subject to default provisions herein, and any and all penalties, interest or other fees and charges as required under the Loan.

5.     Except as otherwise expressly provided herein, all remaining terms of the Loan, which is incorporated herein by this reference, shall govern the treatment of Creditor's Secured Claim.

6.     <u>Pre-Confirmation Default</u>: In the event of any default on any of the provisions of this Stipulation prior to confirmation of Debtors' Chapter 11 Plan, Creditor shall provide written notice, via certified mail, to Debtors at the Subject Property and to Debtors' attorney of record, indicating the nature of default. If Debtors fails to cure the default within the passage of thirty (30) calendar days from the date said written notice is placed in the mail as reflected on the certified receipt, Creditor may file and serve a declaration under penalty of perjury specifying the default, together with a proposed order Terminating the Automatic Stay, which the Court may grant without further

1   notice or hearing, and Creditor may commence any and all action necessary to obtain complete

2   possession of the Subject Property under the terms of the Loan and applicable state law, including

3   but not limited to foreclosure thereof, without further notice, order, or proceeding of this Court.

4         7.    <u>Post-Confirmation Default</u>.  Upon confirmation of Debtors' Chapter 11 Plan, the

5   Automatic Stay shall be deemed terminated as to the Debtors and estate vis-à-vis the Creditor, and

6   Creditor shall no longer be required to comply with paragraph 6 above.  Instead, Creditor may

7   provide Debtors notice of any default related to the Stipulation in accordance with the Loan, and

8   applicable state law and/or proceed with its remedies under the terms of the Loan and applicable

9   state law, including but not limited to foreclosure of the Subject Property, without further notice,

10  order, or proceeding of this Court.

11        8.    Any forbearance by Creditor in exercising any right or remedy, including, without

12  limitation, Creditor accepting payments from third persons, entities or successors in interest to

13  Debtors, or in amounts less than the amount due, including as provided for under this Stipulation,

14  shall not be a waiver of or preclude the Creditor's exercise of any right or remedy under the

15  Stipulation, and/or Loan.  The acceptance by Creditor of a late or partial payment shall not act as a

16  waiver of its right to proceed hereunder or under the Loan documents.

17        9.    In the event the Debtors default under this Stipulation and Creditor forwards a default

18  letter to Debtors, Debtors shall be required to tender Creditor's reasonable attorneys' fees and costs

19  for each default letter submitted, in addition to the default amount stated therein, in order to cure the

20  default. Any notice of default that Creditor provides Debtors and/or Debtors' attorneys pursuant to

21  this Stipulation shall not be construed as a communication under the Fair Debt Collection Practices

22  Act, 15 U.S.C. §1692.

23        10.    The Debtors have reviewed and have no objection to Creditor's Proof of Claim.

24        11.    Debtors shall attach a copy of this Stipulation and Order thereon, and any

25  amendments thereto, to any Chapter 11 Plan filed in this case as an exhibit and said Plan shall

26  expressly incorporate the terms and provisions of this Stipulation and amendments thereto into

27  Debtors' Chapter 11 Plan by reference (including any amended or modified Chapter 11 Plan).  In the

28  event of a conflict between a provision of Debtors' Plan and the Stipulation as to Creditor's claim,

the Stipulation shall control.  Further, the terms and provisions of this Stipulation may not be modified, altered, or changed by any Chapter 11 Plan, including any subsequently filed amended or modified Chapter 11 Plan of Reorganization and/or confirmation order on the foregoing without the express written consent of Creditor.

12.   In the event the Debtors' case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, Creditor shall retain its lien in the full, unmodified amount due under the Loan, and Debtors' will no longer be allowed to cure the contractual arrears as set forth herein, but may seek the assistance through Creditor's Loss Mitigation program to cure and/or address any contractual/forbearance arrears.

13.   Nothing herein shall preclude or prevent Debtors from seeking, or the parties from discussing a potential loan modification with respect to the Loan, or subsequently entering into such agreement with Creditor (and/or its servicer) prior to or after the confirmation of Debtors Plan, which may supersede and/or replace the terms of this Stipulation; however, nothing in this Stipulation shall be construe to require or obligate Creditor (and/or its servicer) in any way to discuss, enter into, agree to enter into, offer or accept any such loan modification.

14.   In exchange for the forgoing, and provided Debtors' Plan is in compliance with this Stipulation, Creditor shall provide a ballot voting in favor of the Debtors' Chapter 11 Plan of Reorganization for the Secured Claim.


Dated: December 14, 2020          **ANGSTMAN JOHNSON, PLLC**


By:/s/ *Matthew Todd Christensen*
     MATTHEW TODD CHRISTENSEN
     Attorney for Debtors


Dated: December 14, 2020          **ALDRIDGE PITE, LLP**


By: /s/ *Jesse A.P. Baker*
     JESSE A.P. BAKER (SBN 8411)
     Attorneys for Wells Fargo Bank, N.A.