Matthew T. Christensen, ISB: 7213
Chad R. Moody, ISB: 9946
ANGSTMAN JOHNSON
199 N. Capitol Blvd, Ste 200
Boise, ID 83702
Phone: (208) 384-8588
Fax: (208) 853-0117
Email: mtc@angstman.com
　　　　chad@angstman.com

Attorneys for Debtors in Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| In re: | Case No. 19-40057-JMM |
|---|---|
| TIMOTHY D. SEMONES and SUSAN C. DESKO,<br><br>　　　　　　　　Debtors. | Chapter 11 |

# **DEBTORS-IN-POSSESSION'S PRE-CONFIRMATION REPORT and RESPONSE TO UST'S MOTION TO DISMISS OR CONVERT CASE**

Tim Semones and Susan Desko (the "Debtors"), the Debtors-in-possession herein, by and through their counsel of record, ANGSTMAN JOHNSON, and pursuant to Local Bankr. R. 3020.1, hereby file this Chapter 11 Pre-confirmation Report. This Report also serves as the Debtors response to the US Trustee's Motion to Dismiss or Convert Case (Docket No. 170).[1] The

---

[1] Due to the overlap between the issues raised in the UST's Objection to Confirmation (Doc. No. 174) and the Motion to Dismiss, the Debtors do not separately identify in this report when something is a response to the Objection, or a response to the Motion. The only exception to this is the Motion's argument that 1112(b)(4)(J) applies in this case. That argument is addressed at the end of this Report.

DEBTORS-IN-POSSESSION'S PRE-CONFIRMATION REPORT AND RESPONSE TO UST'S MOTION TO DISMISS OR CONVERT CASE – Page 1

Debtors filed a Plan of Reorganization on December 15, 2020, (Docket No. 140 – hereinafter the "Plan"). Confirmation of the Plan is scheduled for February 3, 2021.

Concurrent with this Pre-confirmation report, the Debtor has filed a ballot summary. The summary shows that all classes which voted unanimously accepted the Debtors' Plan. Two objections to the Fourth Amended Plan were filed. *See Doc. Nos. 173 and 174*.

The Debtors believe that the applicable requirements of 11 U.S.C. §1129 are satisfied by the Plan. Below, the Debtors set forth the following: the applicable subsections of 11 U.S.C. §1129; the Debtors' satisfaction of each subsection (if applicable); and the specific objections (if any) related to the relevant Code sections.

### 11 U.S.C. §1129(a) ISSUES

The Debtors believe that certain issues to be determined at the confirmation hearing may be disputed but that confirmation of the Plan may occur without further dispute or delay.

1. <u>11 U.S.C. §1129(a)(1): The plan complies with the applicable provisions of this title.</u> The UST objected to this provision (as well as §1129(a)(2)), on three bases: the alleged payments by the Debtor to complete construction and pay the mortgage owed to United Bridge Capital; alleged loan payments made by the Debtors to Inphi Partners; and a failure to object to a claim made by a creditor.

The Debtors do not dispute that the consolidated DIP account included funds which were used to finish construction of the 29 Lake Creek property. Those funds had originally been obtained for purposes of completing the construction, and had been used pre-petition to fund construction. The use of these funds to complete construction was disclosed during the 341 Meetings of Creditors held in the case. Those funds were, in fact, used in the normal course of

business to complete construction. (In fact, without the use of those funds, no occupancy permit would ever have been obtained, and the property would likely not have been sold.)

After the Debtors' case had been progressing, the primary lender on the real property (who held a personal guarantee from the Debtors) indicated that it was no longer willing to defer interest payments on its loan and would be initiating foreclosure proceedings on the real property. The Debtors were able to negotiate an extension of the loan term which allowed Inphi Partners to complete the construction and sale of the property. However, the lender wanted interested payments to begin. The Debtors concede those interest payments were not approved by the Court, but the Debtors argue those payments were necessary in order to avoid foreclosure of the property, which would have left the unsecured creditor class with significantly more dollars owed, and would have resulted in no funds being available for unsecured creditors from the sale of the real property. On the other hand, by paying those interest payments, the Debtors preserved the real property value, which ultimately provided approximately $191,000.00 for unsecured creditor claims.

Next, the Debtors and bankruptcy estate never made loan payments to Inphi Partners. All "loans" to Inphi Partners came from Susan Desko P.C. The UST must concede that the MOR's in this case do not show the loans ever coming from the DIP accounts or the Debtors themselves. Because the loans were made a non-debtor entity, there is no court approval that was necessary, and no violations of the Code should be found.

Last, the UST points to the lack of an objection to Claim 6, filed by Andrew Pitt. This latest objection by the UST is the first time this issue has been raised. In fact, the Debtors reviewed this Claim when it was filed. The Debtors understood Mr. Pitt was not a licensed attorney when he provided services to them. The Debtors also understood the invoice to be for services provided

prior to the actual filing of the bankruptcy petition (i.e., all of the time was for pre-petition work). Having reviewed the claim again, the Debtors have filed an objection to the claim to reduce the rate for work performed and exclude the few time entries after 1/24/19.

Wells Fargo also objected to the Plan, citing compliance with §1123(b)(5), and arguing that the Plan fails to comply with this section by attempting to modify the Class 2 treatment of Wells Fargo's claim.  What is proposed in the Plan is a modification of that claim – but it is a modification which Wells Fargo representatives have already agreed to.  The Debtor, Tim Semones, has spoken multiple times with Wells Fargo representatives who have indicated that the 2nd position debt will be modified in accordance with the plan terms.  The Debtors' counsel has been working with Wells Fargo's counsel since this objection was filed, to get Wells Fargo's left hand to understand what the bank's right hand has already conveyed to the Debtors.  The Debtors anticipate this objection will be resolved by the time of the confirmation hearing – either through a consenting vote (and withdrawal of the objection) or a stipulated resolution.

Based on the foregoing, the Debtors assert the Plan complies with §1129(a)(1) and (2).

2. <u>11 U.S.C. §1129(a)(2): The proponent of the plan complies with the applicable provisions of this title.</u>  See comments above related to §1129(a)(1).

3. <u>11 U.S.C. §1129(a)(3):  The plan has been proposed in good faith and not by any means forbidden by law.</u>  No party has raised an objection on the basis of this subparagraph, and the Debtors assert that the Plan meets these requirements.

4. <u>11 U.S.C. §1129(a)(4):  Any payment made or to be made by the proponent, [or] by the debtor … for services or for costs and expenses in or connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the</u>

approval of, the court as reasonable. No party has raised an objection based on this subparagraph, and the Debtors assert that the Fourth Amended Plan meets these requirements.

    5.    <u>11 U.S.C. §1129(a)(5):</u>

        a.    <u>11 U.S.C. §1129(a)(5)(A)(i): The proponent of the plan has disclosed the identity of any individual proposed to serve as a successor to the Debtor under the Plan.</u> The Debtors are individuals, so there are no "successors" to the Debtors proposed under the Fourth Amended Plan. The Debtors assert that this provision is either inapplicable or met by the Fourth Amended Plan.

        b.    <u>11 U.S.C. §1129(a)(5)(A)(ii):  The appointment and continuance in the office of the insider is consistent with the interests of creditors and equity security holders and with public policy.</u> The Debtors are individuals, so there are no "offices" to be continued through the Fourth Amended Plan. The Debtors assert that this provision is either inapplicable or met by the Fourth Amended Plan.

        c.    <u>11 U.S.C. §1129(a)(5)(B): Disclosure of insiders.</u> The Plan has disclosed the Debtors' ongoing role and there are no other insiders proposed under the Fourth Amended Plan. The Debtors assert that the Fourth Amended Plan meets this provision. No party has objected under these subsections, and the Debtors assert they are either inapplicable or met by the Fourth Amended Plan.

    6.    <u>11 U.S.C. §1129(a)(6):  Any governmental regulatory commission over rates of the Debtor has approved any rate change provided for in the Plan.</u> To the best of the Debtors' knowledge, no regulatory commission has jurisdiction over any issues involved with confirmation of the Plan and this provision has been satisfied. There was no objection raised to this subsection and this issue is not in dispute.

7. <u>11 U.S.C. §1129(a)(7): Each impaired class of claims has accepted the plan or will receive under the Plan property of a value as of the effective date of the Plan that is not less than the amount that such holder would receive if the Debtor were liquidated under Chapter 7 of this Title.</u>  Every class entitled to vote on the Plan unanimously accepted the Plan, and no party has raised an objection based on this subsection.  Consequently, the Debtors assert that the Fourth Amended Plan meets the requirements of this subsection.

8. <u>11 U.S.C. §1129(a)(8): Each class has either accepted the Plan or is not impaired under the Plan.</u>  No party has objected based on this subsection and the Debtors assert that the Fourth Amended Plan meets the requirements of this subsection.

9. <u>11 U.S.C. §1129(a)(9): The Plan provides for payments of administrative and priority claims described in 11 U.S.C. §507(a)(1) through (a)(8).</u>  This Plan provides the treatment specified in §1129(a)(9).  In the event the Court determined the excess UST fees are property assessed, the balance will be promptly paid by the Effective Date of the Fourth Amended Plan.

10. <u>11 U.S.C. §1129(a)(10): One impaired class voted to accept the plan.</u>  As indicated above, and on the Debtors' concurrently-filed Ballot Summary, at least one impaired class has voted to accept the Plan.  Therefore, this provision is satisfied.  No party raised an objection based on this subsection.

11. <u>11 U.S.C. §1129(a)(11): Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the Plan, unless such liquidation or reorganization is proposed in the plan.</u>  The Debtors believe this provision has been, or will be satisfied.  The bulk of the UST's objection is on this basis, after the UST reviewed the Monthly Operating Reports ("MORs") and 2015.3 reports filed by the Debtors, and painted a bleak picture of the Debtor's financial activity during the time

period of the bankruptcy case. However, the UST does not disclose that the Debtors have only transferred funds from SD Consulting and Susan Desko PC, as needed to fund DIP account expenses. This became especially true in 2020 after the Debtors' mortgage payments went into COVID-induced hiatus. Since that time, the Debtors actual monthly expenses have been minimal – and the minimum amount was paid out of the business accounts to support the Debtors monthly expenses. During that same time period, the Debtors have been saving money in the business accounts for use after their Plan is confirmed. The Debtors intend to testify at the confirmation hearing that they have approximately $60,000.00 available to begin funding the salaries projected in the Plan, and that there is sufficient existing and projected business to continue those salaries for the time period covered by the Fourth Amended Plan. No party knows better what the Debtors' income prospects are than the Debtors' themselves. Further, all of the affected parties have either not rejected the Plan or accepted the Plan based on the Debtors' income projections.

12. <u>11 U.S.C. §1129(a)(12): Fees payable under 28 U.S.C. §1930 are paid or provided for under the Plan.</u> The plan provides for the payment of the fees contemplated by 11 U.S.C. §1129(a)(12), including outstanding United States Trustee quarterly fees. The Debtors dispute a portion of the fees assessed by the UST for the 2nd quarter of 2020. The Debtors and attorney for the UST have exchanged several emails in an effort to resolve the issue, but ultimately do not agree on the amount owed for that quarter. The parties agreed to submit that disagreement for the Court's determination in connection with confirmation of the Plan. (In the event the Debtors position prevails, the fees would not be due and the Debtors are otherwise current on UST fees. In the event the UST's position prevails, the Debtor will pay the outstanding fees by the Effective Date of the Plan.)

The facts outlined by the UST in support of its position on fees are not entirely correct. Debtor Tim Semones is the owner of Inphi Partners, LLC – a separate limited liability company created to develop two properties in Ketchum, Idaho. Prior to the bankruptcy case, Inphi Partners borrowed approximately $2,221,000.00 from United Bridge Capital LP to help fund the construction of the 29 Lake Creek Property. This loan was secured by a lien on the property, an assignment of rents and plans, as well as a personal guarantee from Tim Semones. At the time of filing, this loan was still owed by Inphi Partners and guaranteed by Tim Semones. This debt is listed on the Debtors' bankruptcy schedules as unsecured personal guaranty debt.

Also prior to the bankruptcy filing, money had been received from Eta Compute, Inc. Mr. Semones was, at one time, CFO for Eta Compute and took the funds while he was CFO. The Eta Compute Inc. funds were all paid directly to either Inphi Partners, or Susan Desko P.C. – none were paid directly to the Debtor.[2] Prior to the bankruptcy petition being filed, Eta Compute had pursued both Debtors as well as Inphi Partners and Susan Desko PC, in a federal district court case seeking to recover the funds and seize property.[3] The bankruptcy petition obviously stayed the pursued of the District Court Case as to the Debtors – but not the companies. The Debtors pursued an injunction against further litigation in the District Court Case.[4] While the request for an injunction was pending in the Injunction Case, all parties negotiated a resolution to Eta Compute's claims against Inphi Partners and Susan Desko PC while the Debtors bankruptcy case remained pending. Such a resolution was ultimately made, and approved by both the District Court and Bankruptcy Court.[5] This court approved the resolution of the claims against Inphi Partners, at least in part, because it did not create any new debt owed by Inphi Partners but was, in fact, a debt

---

[2] See Docket 1 in Adv Case No. 19-08028-JMM (the "Nondischargeability Case").
[3] See District of Idaho Case No. 1:18-cv-00552-BLW (the "District Court Case").
[4] See Adv. Case No. 19-08013-JMM (the "Injunction Case").
[5] See Docket 53 in the District Court Case, and Docket 17 in Adv. Case No. 19-08013-JMM.

DEBTORS-IN-POSSESSION'S PRE-CONFIRMATION REPORT AND RESPONSE TO
UST'S MOTION TO DISMISS OR CONVERT CASE – Page 8

that Inphi Partners likely owed as well.[6]  Subsequently, the Deed of Trust was granted and recorded "for the purpose of securing a judgment or judicial order to be entered by a court of competent jurisdiction up to $1,800,000.00 for the repayment of Grantee's funds that were transferred…"  The Deed of Trust was not granted solely to secure the Debtors potential obligations to Eta Compute – but to secure Inphi Partners and Susan Desko PC's obligations as well.  Indeed, had the Deed of Trust been granted solely to secure the Debtors' obligations, this Court likely would not have approved the resolution – as outlined in its order.  Contrary to the UST's assertion – the Deed of Trust granted by Inphi Partners secured a debt owed by Inphi Partners

Subsequent to the resolution of the litigation against Inphi Partners and Susan Desko PC, Eta Compute also filed a nondischargeability complaint against the Debtors.  The Nondischargeability Case did not affect the debts owed by Inphi Partners or Susan Desko PC – it related solely to whether Semones and Desko could discharge the debts owed to Eta Compute.  Accordingly, the resolution of the Nondischargeability Case through a stipulated judgment did not otherwise affect the debts owed by Inphi Partners.  Indeed, the stipulation to entry of judgment specifically allowed that the judgment amount would be satisfied "upon receipt of payment from Semones, Desko, *Inphi Partners, LLC, and/or Susan Desko P.C.,* in the amount of $1,300,000.00…" (emphasis added).  The agreed-upon release of liability in the Nondischargeability Proceeding by Eta Compute applied only to Semones and Desko, because those were the only two parties to the Nondischargeability Case.  However, when the secured amounts were later paid at the sale, Eta Compute also released Inphi Partners and Susan Desko PC from any further liability.[7]

---

[6] See Docket 17 in Adv. Case No. 19-08013-JMM, page 3, paragraphs e and f; and pages 4-5.
[7] See District Court Case, Docket No. 57 (Stipulation of Dismissal).

DEBTORS-IN-POSSESSION'S PRE-CONFIRMATION REPORT AND RESPONSE TO
UST'S MOTION TO DISMISS OR CONVERT CASE – Page 9

Consequently, the debt owed to Eta Compute was no different from the debt owed to United Bridge Capital. Both debts were owed primarily by Inphi Partners. Both debts were also owed by Tim Semones individually (and Susan Desko individually, in the case of Eta Compute).

When the real property was ultimately sold in May 2020, $2,371,630.10 was paid to United Bridge Capital to retire the debt owed by Inphi Partners, and $1,300,000.00 was paid to Eta Compute to retire the debt owed by Inphi Partners. Both payments also released the individual Debtors from personal liability – but were primarily paid to release Inphi Partner's liability and release the Deeds of Trust held by those creditors. The UST incorrectly asserts that "the only unsecured creditor in Debtors' Bankruptcy Case that was paid with proceeds from the sale of the Real Property was Eta." This is simply untrue. United Bridge Capital was an unsecured creditor in the Bankruptcy Case. Banatao Living Trust was an unsecured creditor in the bankruptcy case. United Bridge was paid from the sale, and the unsecured guaranty debt was released. Banatao Living Trust is pursuing the forfeited funds paid to the US Marshal.

The shift in the Debtors MOR's was nothing nefarious – it was simply a recognition that certain individual debts had been retired by Inphi Partners' sale of the real property. It was not a recognition that *the Debtors* had paid those debts – just that the debts were no longer owed by the Debtors. Similarly, the filing of the Report of Sale was not made as an indication that *the Debtors* had sold anything or paid any debts. Rather, the Report of Sale was filed to provide an indication why the MOR had been adjusted.

While the Debtors disagree that the forfeited funds were "distributions" by the Debtors, they choose not to dispute the assessment for those funds. The Debtors only dispute the UST assessment related to the $1,300,000.00 paid by Inphi Partners to Eta Compute.

The UST correctly acknowledges that "disbursements" is not defined in the statute. The UST also correctly analyzes Ninth Circuit authority that defines "disbursements" broadly. What the UST seems to be selectively ignoring is the separateness of Inphi Partners from the Debtors and the fact the Eta Compute debts were owed separately by Inphi Partners, and were in fact secured by Inphi Partners property. This court has previously and consistently recognized the difference between wholly-owned companies and individual Debtors. *See, e.g., In re Aldape Telford Glazier, Inc.*, 410 B.R. 60 (Bankr. D. Idaho, 2009). Accordingly, if the assets of an LLC are not considered assets of the bankruptcy estate, then the payments to creditors from proceeds of those non-estate assets should similarly not be considered distributions by the bankruptcy estate.

The confusing nature of the UST's position is further belied by the treatment it gave to the distribution to United Bridge Capital. As explained by the UST in an email to Debtor's counsel:

> The $2.3MM payment to United Bridge Capital in connection with the sale of the 29 Lake Creek property is not a disbursement. Generally, disbursement means all payments made by, or on behalf of, a debtor during a chapter 11 case, and the payment to United Bridge Capital was not made by the Debtors or on behalf of the Debtors. Rather, it was made by Inphi Partners in satisfaction of its obligations to United Bridge Capital.

Nonetheless, of course, the payment to United Bridge Capital also extinguished the Debtors' obligations to United Bridge Capital. This exact same analysis applies to the payment to Eta Compute. Inphi Partners owed Eta Compute equally with the Debtors. Inphi Partners had granted a lien to Eta Compute to secure its own obligations to Eta Compute. The payment to Eta Compute was "made by Inphi Partners in satisfaction of its obligations to United Bridge Capital." The UST cannot have the situation both ways. Inphi Partners was paying its own obligations to Eta Compute – separate obligations which this Court has previously recognized were separate obligations from the Debtors. The Debtors assert that they have paid all required UST payments,

and request this Court disallow the additional amount assessed by the UST. In any event, the Plan meets the requirements of this subsection.

13. <u>11 U.S.C. §1129(a)(13): Continuation of all retiree benefits.</u> The Debtors are not paying retiree benefits as defined by §1114 of the Bankruptcy Code, and therefore this provision is inapplicable and/or satisfied by the Debtors' Fourth Amended Plan. Further, no party has objected to confirmation based on this provision.

14. <u>11 U.S.C. §1129(a)(14): Domestic support obligations.</u> This provision is inapplicable as the Debtors do not have domestic support obligations. Further, no party has raised an objection based on this provision.

15. <u>11 U.S.C. §1129(a)(15): In an individual debtor's case where a holder of an allowed unsecured claim objects, the value of the property to be distributed under the plan is not less than the amount of such claim or the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor during the five (5) year period beginning on the date the first payment is due under the plan.</u> No holder of an allowed unsecured claim has objected, and in any case the Fourth Amended Plan meets the requirements of this subsection. Further, no party raised an objection based on this provision.

16. <u>11 U.S.C. §1129(a)(16): All transfers of property of the Plan shall be made in accordance with applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.</u> The Debtors are not a corporation or a trust fitting this description and therefore this provision is inapplicable and/or satisfied by the Debtors. Further, no party has objected to confirmation based on this provision.

## 11 U.S.C. §1129(b) ISSUES

As stated above, the Debtors believe that all provisions of 11 U.S.C. §1129(a) have been satisfied. Therefore, the provisions of 11 U.S.C. §1129(b) are inapplicable to confirmation of this Plan.

## 1112(b)(4)(J) ISSUES RAISED IN MOTION TO CONVERT OR DISMISS

In its Motion to Dismiss, the UST raises issues related to 1112(b)(4)(J) which requires filing and confirming a plan "within the time fixed by this title or by order of the court." While the UST acknowledges that neither the Bankruptcy Code nor this Court have set a time for confirming a plan, it argues that it must be done in a "reasonable time". The reason the provision of 1112(b)(4)(J) ties the dismissal or conversion to a time "fixed" by the Code or court is that a "reasonable time" is amorphous and means different things in different contexts. Here, neither the Code nor this Court have set any deadlines for confirming a Plan and therefore this provision does not apply. In fact, this Court has allowed the Debtors to propose several amended Plans – and all creditors have voted in favor of this last Fourth Amended Plan.

## MODIFICATIONS TO BE PLACED IN THE ORDER CONFIRMING THE PLAN

At present, the Debtors do not anticipate any modifications be placed in the order confirming the Fourth Amended Plan.

## SUMMARY OF 11 U.S.C. §1129 SUBSECTIONS AT ISSUE AT CONFIRMATION

Based on the objections filed by the United States Trustee, the Debtors assert that Sections 1129(a)(1), (2), (11) and (12) are at issue at the upcoming confirmation hearing.

## NOTICE OF INTENT TO PRESENT EVIDENCE

Pursuant to Local Bankruptcy Rule 9014.1, the Debtors provide notice of their intent to present evidence and cross-examine witnesses at the confirmation hearing to be held on February 4, 2021. The Debtors intend to call Tim Semones and/or Susan Desko as a witness at that hearing.

DATED this 29th day of January, 2021.

/s/ Matt Christensen
MATTHEW T. CHRISTENSEN
Attorney for Debtors

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 29th day of January, 2021, I filed the foregoing PRE-CONFIRMATION REPORT AND RESPONSE TO UST'S MOTION TO DISMISS OR CONVERT CASE electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Lesley Bohleber | ecfidb@aldridgepite.com |
| Craig W. Christensen | cwc@racinelaw.com |
| Matthew T. Christensen | mtc@angstman.com |
| Scott D. Goldsmith | goldsmith.scott@dorsey.com |
| Robert Glenn Harris | rob@bindermalter.com |
| Amber K. Kauffman | amber.kauffman@tax.idaho.gov |
| J. Michael Keyes | keyes.mike@dorsey.com |
| Peter J. Kuhn | peter.j.kuhn@usdoj.gov |
| Edward B. Magarian | magarian.edward@dorsey.com |
| Jed W. Manwaring | jmanwaring@evanskeane.com |
| Chad R. Moody | chad@angstman.com |
| David W. Newman | ustp.region18.bs.ecf@usdoj.gov |
| US Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Steven T. Waterman | waterman.steven@dorsey.com |

Any others as listed on the Court's ECF Notice.

                                                    /s/ Matt Christensen
                                                    Matthew T. Christensen